Opinion
CORRIGAN, J.
Plaintiffs lawsuit was dismissed for failure to comply with Code of Civil Procedure[1] section 583.310, which requires that an action “be brought to trial within five years after the action is commenced against the defendant.” The issue here is whether the statute was tolled by an order entered pursuant to the parties’ agreement. The order struck the trial date and “stayed” the proceedings while the parties engaged in mediation and completed all outstanding discovery.
In computing the five-year time frame, the court must exclude any period when the “[pjrosecution or trial of the action was stayed or enjoined.” (§ 583.340, subd. (b); hereafter section 583.340(b).) The court must also exclude any time when it was “impossible, impracticable, or futile” to bring the case to trial. (§ 583.340, subd. (c); hereafter section 583.340(c).) The trial court held that neither of those tolling provisions saved this case from dismissal. The Court of Appeal affirmed the dismissal as to all but one defendant. We affirm the Court of Appeal’s judgment. As explained in greater detail below, the statutory framework and our own case law recognize that a stay can be either partial or complete. A complete stay will operate to automatically toll the five-year period. A partial stay will not do so unless it results in a circumstance of impossibility, impracticability, or futility. We conclude that the court’s order did not effect a complete stay of the prosecution of the action. Nor did the order create a circumstance of impracticability because plaintiff agreed to it, remained in control of the circumstances, and made meaningful progress towards resolving the case during the stay period. Accordingly, the period of the “mediation stay” did not toll the five-year period.
I. BACKGROUND
Fannie Marie Gaines and her husband, Milton, owned a home in Los Angeles with an appraised value of $1.25 million. They held over $500,000 in equity in the property. A $554,000 loan with Countrywide Home Loans, *1088 Inc. (Countrywide), was secured by a first deed of trust. The Gaineses fell behind in their mortgage payments, received two notices of default from Countrywide, and failed in their attempts to refinance. Facing foreclosure, they agreed to sell the property to Tornberg, Johnson, and Ray Management (Tornberg) with an option to lease the property and repurchase it. Tornberg obtained loans that were secured by the property and subsequently transferred to various entities. The complaint here alleges that Tornberg and others involved in the transaction deceived the couple into selling their home under threat of foreclosure.
Milton died before the suit was filed. Mrs. Gaines filed a complaint on November 13, 2006, alleging negligence, fraud, intentional infliction of emotional distress, and failure to follow home equity sales contract requirements contained in the Civil Code. She sought rescission and cancellation of the deed transferring ownership of the property.
Once begun, the suit followed an involved procedural journey. Amended complaints and answers were filed and defendants substituted. In November 2009 Mrs. Gaines died and her son, Milton Howard Gaines, was substituted as successor in interest.[2] An extended dispute subsequently arose concerning whether one of the defendants, Aurora Loan Services, LLC (Aurora), held legal title to the property. Aurora originally admitted holding title, but subsequently urged that Lehman Brothers Holdings, Inc. (Lehman), by then in bankruptcy, was the actual owner. Much delay resulted from disputes over that question and plaintiffs ultimate motion for relief from Lehman’s bankruptcy stay. We need not delve into those complexities to resolve the question before us.
On May 19, 2012, Fidelity National Title Insurance Company (Fidelity) moved to dismiss for failure to bring the action to trial within the five-year time frame required by section 583.310. When the motion was filed, the case had been pending for approximately five and a half years. A trial date was scheduled for August 6, 2012. At no time did Gaines move to advance the trial date.
In opposition to the motion, Gaines claimed the five-year period had been tolled several times. In computing the period of pendency, the trial court excluded two months for the delay resulting from Mrs. Gaines’s death, and 125 days during which plaintiff sought relief from Lehman’s bankruptcy stay. Those rulings are not disputed here. However, the court did not exclude the time during which the court had vacated the trial date and ordered a 120-day *1089 stay of proceedings to permit the parties to engage in mediation. It concluded that, because this mediation period did not support tolling, the scheduled trial date exceeded the five-year limitation by 82 days. The case was ultimately dismissed in its entirety on August 24, 2012.
The facts relevant to the question before us are undisputed. In April 2008 Gaines applied for an order to vacate a September 2008 trial date, which was scheduled to occur less than two years into the pendency of the litigation. The application stated that all parties had agreed to vacate the trial date, to stay the action for 120 days, and to participate in mediation. The parties agreed that responses to pending discovery requests would not be stayed. Consistent with this agreement, the trial court’s April 3, 2008 order (1) “struck” the current trial date of September 22, 2008; (2) “stayed [the case] for a period of 120 days except that [the] parties are to respond to all previously served and outstanding written discovery”; (3) set a postmediation and trial-setting conference on July 16, 2008; and (4) directed “all parties ... to participate in good faith in a mediation of all claims in this case within the next 90 days.” The ensuing mediation conducted on May 30, 2008, was not successful except that Gaines moved to dismiss one defendant on June 9, 2008, in exchange for the reconveyance of its $150,000 interest in the property.
At a November 6, 2008 status conference, the mediation stay was lifted and an August 29, 2009 trial date was set. The original stay was ordered to last 120 days, but was actually lifted after 217 days. The longer period was occasioned, in part, by judicial reassignments. We analyze the legal question here in terms of the 217-day period between granting and lifting the mediation stay.
The trial court concluded that section 583.340(b) did not apply to this period because there was not a complete stay of the prosecution as required under that exception. It further concluded that the mediation stay did not create a circumstance of impossibility, impracticability, or futility under section 583.340(c). The stay was requested by plaintiff and was not a circumstance beyond plaintiffs control. It was to last only 120 days and did not affect previously served and outstanding written discovery. Further, plaintiff did not demonstrate diligence during the period in question.
The Court of Appeal affirmed the trial court’s dismissal as to all defendants but Lehman.[3] We uphold the Court of Appeal.
II. DISCUSSION
An action must be brought to trial within five years after it is commenced. (§ 583.310.) If this deadline is not met, the action “shall be *1090 dismissed by the court on its own motion or on motion of the defendant, after notice to the parties . . . .” (§ 583.360, subd. (a).) “The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute.” (§ 583.360, subd. (b).) The question before us is whether the trial court’s order vacating the trial date and granting the mediation stay fell within one of the statutorily recognized exceptions to the five-year period. In construing these provisions, “the policy favoring the right of parties to make stipulations in their own interests and the policy favoring trial or other disposition of an action on the merits are generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action . . . .” (§ 583.130.)
The statutes governing dismissal for delay in prosecution were revised in 1984. (Stats. 1984, ch. 1705, § 5, pp. 6176-6180.) The legislative history makes clear that the revision was prepared by the California Law Revision Commission. The Legislature and commission intended largely to codify, not supplant, the quasi-common law developments in this area that had evolved over the preceding decades. (See Assent. Com. on Judiciary, Rep. on Sen. Bill No. 1366 (1983-1984 Reg. Sess.) as amended July 3, 1984, p. 3 [“ ‘The major purpose of the bill is to clarify ambiguities in the law, to bring the statutes into conformity with case law interpreting them, and to reconcile discrepancies in statutes and cases.’ ”]; Revised Recommendation Relating to Dismissal for Lack of Prosecution (June 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 916 [“The statutes should accurately state the law. The proposed law codifies the significant case law rules governing dismissal for lack of prosecution . . . .”].) Accordingly, in addition to the statutory language, a substantial body of case law guides our analysis.
A. Submission of the Action to Mediation (§ 1775.7)
We begin with section 1775.7, which expressly addresses the effect of mediation on the running of the five-year period. That section provides that submission of an action to mediation under the title’s provisions shall not toll the running of section 583.310’s five-year period except when the action is or remains submitted to mediation more than four years and six months after the action is filed. (§ 1775.7, subds. (a), (b).) Although neither party cited the mediation statutes in the courts below, we have discretion to consider whether these statutes affect this dismissal, which is a question of law raised by the parties and pertinent to a proper disposition of the case. (People v. Randle (2005) 35 Cal.4th 987, 1001-1002 [28 Cal.Rptr.3d 725, 111 P.3d 987], overruled on another ground in People v. Chun (2009) 45 Cal.4th 1172, 1201 [91 Cal.Rptr.3d 106, 203 P.3d 425]; People v. Superior Court (Zamudio) (2000) 23 Cal.4th 183, 195 [96 Cal.Rptr.2d 463, 999 P.2d 686].)
*1091 Section 1775.7 is part of a statutory scheme implementing the civil action mediation program. (Jeld-Wen, Inc. v. Superior Court (2007) 146 Cal.App.4th 536, 540 [53 Cal.Rptr.3d 115] (Jekl-Wen).) Its provisions apply to cases with an amount in controversy not exceeding $50,000 (§ 1775.5), and to all cases, regardless of potential liability, when all parties file a written stipulation to mediate (Cal. Rules of Court, rules 3.890, 3.891(a)(2); Jeld-Wen, at p. 541). The parties did so here.
Section 1775.7 provides for automatic tolling when mediation is conducted late in the pendency period. (Cf. Howard v. Thrifty Drug & Discount Stores (1995) 10 Cal.4th 424, 434 [41 Cal.Rptr.2d 362, 895 P.2d 469] (Howard) [discussing parallel provisions of § 1141.17 governing court-ordered arbitration].) ‘“[T]he five-year statute will only stop running for [mediations] beginning or continuing into the last six months of the five-year period, and then only from the four-year six-month date after filing the action until the date a trial de novo is requested.” (Howard, at p. 434.) This mediation, which occurred in the second year of litigation, does not qualify for tolling under section 1775.7. Gaines does not contend otherwise.
B. Time During Which Prosecution or Tried of the Action Was Stayed or Enjoined (§ 583.340(b))
The order in this case did not simply direct the parties to mediate. It also struck the scheduled trial date of September 22, 2008, and ‘“stayed [the case] for a period of 120 days except that [the] parties are to respond to all previously served and outstanding written discovery” and ‘“are directed to participate in good faith in a mediation of all claims in this case within the next 90 days.” Gaines argues these conditions triggered the exception codified in section 583.340(b) that requires the court to exclude the time during which “[prosecution or trial of the action was stayed or enjoined.”
Applying our holding in Bruns v. E-Commerce Exchange, Inc. (2011) 51 Cal.4th 717, 725 [122 Cal.Rptr.3d 331, 248 P.3d 1185] (Bruns), the trial court and Court of Appeal concluded that this stay did not qualify for tolling under section 583.340(b) because it was not a complete stay of all the proceedings in the action. We asked the parties for supplemental briefing on whether the order striking the existing trial date constituted a stay of the “trial of the action” under that section. (Ibid.) We conclude that neither condition was satisfied here.
1. Stay of the Tried
To decide whether section 583.340(b) applies, we must distinguish between a stay of the trial and a continuance. Under section 583.340(b), a *1092 stay of the trial halts the running of the five-year period. (Bruns, supra, 51 Cal.4th at p. 725.) By contrast, a continuance generally does not. We have long observed that “[stipulations [by the parties] that merely extend the time for trial within the five-year period, absent a showing that the parties intended otherwise, will not extend the five-year period.” (J. C. Penney Co. v. Superior Court (1959) 52 Cal.2d 666, 669 [343 P.2d 919] (J. C. Penney); accord, Miller & Lux Inc. v. Superior Court (1923) 192 Cal. 333, 337-338 [219 P. 1006] (Miller & Lux); Sanchez v. City of Los Angeles (2003) 109 Cal.App.4th 1262, 1269, fn. 3 [135 Cal.Rptr.2d 869].)
The label the trial court uses is not dispositive of the inquiry. (Holland v. Dave Altman’s R. V. Center (1990) 222 Cal.App.3d 477, 482 [271 Cal.Rptr. 706] (Holland).) What matters is whether the order is functionally in the nature of a stay, which implicates the legislative purposes behind tolling the five-year period, or whether it is functionally in the nature of a continuance, which does not. Accordingly, we do not read too much into the trial court’s declaration that the trial date is being “struck,” as opposed to “continued” or “stayed.” We review the question de novo because it does not hinge on the resolution of factual questions concerning credibility of extrinsic evidence. (Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839] (Parsons).)
The long-standing judicial understanding of the term “stay” in the context of the five-year statute is that it refers to those postponements that freeze a proceeding for an indefinite period, until the occurrence of an event that is usually extrinsic to the litigation and beyond the plaintiff’s control. Holland, supra, 222 Cal.App.3d 477, provides an example. There, the plaintiff appealed the trial court’s order quashing service on one of the defendants. (Id. at p. 479.) The plaintiff filed an “ ‘Ex Parte Motion for Continuance of Defendant’s Motion for Summary Judgment, Trial Date, Mandatory Settlement Conference, and Demand for Designation of Expert Witnesses.’ ” (Id. at p. 481.) The trial court ordered that “ ‘the trial date set for March 17, 1987 ... be continued until the pending appeal has been decided.’ ” (Ibid.) The minute order reflected that the trial date was vacated and the case was “ ‘off calendar’ ” “ ‘pending ruling on appeal.’ ” (Ibid.) A subsequent minute order additionally stated: “ ‘Mandatory settlement conference and trial to be reset in Department NWA after ruling of appellate court.’ ” (Id. at p. 482.) The appeal was ultimately resolved against the plaintiff over a year later, on March 29, 1988. (Id. at p. 480.)
The appellate court concluded that, notwithstanding the use of the term “ ‘continue,’ ” the order amounted to a stay of the trial under section 583.340(b). (Holland, supra, 222 Cal.App.3d at p. 482.) The court reasoned that “it is plain ... the court did not intend to postpone trial to any known *1093 date. Instead, it put the trial over indefinitely, until the happening of a designated event: determination of the . . . appeal. The legal effect of this order was to stay, rather than to continue the trial.” (Ibid.; accord, Ocean Services Corp. v. Ventura Port Dist. (1993) 15 Cal.App.4th 1762, 1773-1774 [19 Cal.Rptr.2d 750] [stay pending appeal of order disqualifying plaintiffs counsel in related action]; Rosenthal v. Wilner (1988) 197 Cal.App.3d 1327, 1331, 1333-1334 [243 Cal.Rptr. 472] [appellate court’s order directing trial court to stay all proceedings pending resolution of related appeal that would affect issues such as proximate cause and damages tolled the proceedings under § 583.340(b)]; Hughes v. Portsmouth Square, Inc. (1982) 135 Cal.App.3d 170, 173 [184 Cal.Rptr. 926] [under former § 583, the filing of a petition in bankruptcy qualifies for tolling because it operates as a stay on the commencement or continuation of any action against the bankrupt party]; cf. Spanair S.A. v. McDonnell Douglas Corp. (2009) 172 Cal.App.4th 348, 358-359 [90 Cal.Rptr.3d 864] [removal of case to federal court suspended trial court’s jurisdiction]; Bergin v. Portman (1983) 141 Cal.App.3d 23, 25-26 [190 Cal.Rptr. 81] [appeal of motion for summary judgment suspended trial court’s jurisdiction].)
By contrast, stipulated continuances that are not tied to any matter outside the parties’ control more logically fall under section 583.330. That section provides that the parties may extend the five-year period during which an action must be brought to trial by written stipulation or oral agreement made in open court. (§ 583.330, subds. (a), (b).) The reason for the requirement was given as follows: ‘“The provision [of former section 583] that a written stipulation be entered into was intended to preclude all disputes, with their attendant charges and countercharges of overreaching and unethical conduct, by a requirement that clear and uncontrovertible evidence be presented to the court that the statutory time was deliberately intended to be extended by both parties.” (Miller & Lux, supra, 192 Cal. at p. 340 [discussing former § 583]; accord, Taylor v. Shultz (1978) 78 Cal.App.3d 192, 196 [144 Cal.Rptr. 114].) There was no written stipulation or oral agreement here.
We conclude that this order striking the trial date at the parties’ request should be construed as a continuance of the trial of the action rather than a stay. The trial was not continued indefinitely. Instead, the date was struck pending two defined contingencies: a definite 90-day period for mediation to occur and a 120-day stay of the proceedings. Neither of the contingencies was extrinsic to the litigation. Both were agreed to by the parties and totally within their control. Neither necessitated a stay of the trial, which was over five months distant. Plaintiff represented that ‘“good cause exist[ed] for granting the parties’ request for a continuance of the current trial date” because newly named defendant, Aurora, had not formally appeared or conducted discovery, and defendant Countrywide anticipated filing a motion for summary judgment. (See Cal. Rules of Court, rule 3.1332(c) [grounds for *1094 continuance of trial].) Although the order did not set a new trial date, it identified a date certain to resume proceedings by calendaring a July 16, 2008 trial-setting conference. This stipulated trial postponement, agreed to by the parties and not occasioned by an extrinsic proceeding, court order, or law barring action, does not qualify for automatic tolling.
2. Stay of the Prosecution of the Action
In Bruns, supra, 51 Cal.4th 717, we addressed the meaning of a stay of the prosecution of the action under section 583.340(b). There the plaintiff sought to exclude time during which stays of discovery and other specific proceedings were in effect. {Bruns, at p. 721.) We held that “the prosecution of an action is stayed under subdivision (b) only when the stay encompasses all proceedings in the action.” (Id. at p. 722, first italics added.) We reasoned: “subdivision (b) contemplates a bright-line, nondiscretionary rule that excludes from the time in which a plaintiff must bring a case to trial only that time during which all the proceedings in an action are stayed.” (Id. at p. 726, italics added.) Such complete stays “ ‘stop the prosecution of the action altogether’ ” (id. at p. 730, quoting Black’s Law Dict. (5th ed. 1979) p. 1267, col. 1), making it impossible to bring the action to trial (Bruns, at p. 726). The circumstances of a partial stay can vary, however, and might not have such an effect. (Ibid.) In the latter circumstance, the court must look to the “ ‘impossible, impracticable, or futile’ ” standard of section 583.340(c) to assess the effect of a partial stay of the proceedings. (Bruns, at pp. 726, 730.)
This order provided that the “case is stayed for a period of 120 days.” Nonetheless, it contemplated that the case would move forward during the relevant period in two respects: The parties were ordered to respond to previously served and outstanding discovery and to participate in mediation in an effort to settle the lawsuit. The trial court found this stay was only a partial one that did not qualify for automatic tolling under section 583.340(b). We review the question de novo because it does not hinge on the resolution of factual questions concerning credibility of extrinsic evidence. (Parsons, supra, 62 Cal.2d at p. 865.) As with the stay of trial exception discussed above, the label used in the trial court’s order is not dispositive. (Holland, supra, 222 Cal.App.3d at p. 482.)
“The term ‘prosecution’ is sufficiently comprehensive to include every step in an action from its commencement to its final determination.” (Ray Wong v. Earle C. Anthony, Inc. (1926) 199 Cal. 15, 18 [247 P. 894] (Ray Wong).) Discovery constitutes a step in the prosecution of the action. (Melancon v. Superior Court (1954) 42 Cal.2d 698, 707 [268 P.2d 1050] [depositions].) Because the order required the parties to comply with previously served and outstanding written discovery, it did not “ ‘stop the prosecution of the action altogether.’ ” (Bruns, supra, 51 Cal.4th at p. 730.) Gaines *1095 counters that the provision allowing for ongoing discovery was “merely precautionary” and that “there was no evidence presented that any discovery responses were ever served during the period of the stay.” This argument misses the mark. As the Court of Appeal observed, “[w]hether any party actually served discovery responses during the 2008 stay does not recharac-terize the trial court order, which allowed for some discovery to take place during the stay.”
We further conclude that submission of this action to mediation pursuant to the parties’ filed stipulation constituted a “step in [the] action” (Ray Wong, supra, 199 Cal. at p. 18), within the meaning of section 583.340(b) and Bruns. Mediation is “a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement.” (§ 1775.1, subd. (a); accord, Evid. Code, § 1115, subd. (a).) It does not abate the civil suit; it is a means by which the parties may reach a settlement of the suit. (Jeld-Wen, supra, 146 Cal.App.4th at p. 540.) These parties sought a court order directing them to mediate pursuant to their written stipulation, thus incorporating the procedure and rules that govern mediation into the prosecution of the case. (§ 1775 et seq.; see Discussion, ante, at pp. 1090-1091.)[4]
Cases hold that a stay of proceedings pending the outcome of contractual arbitration tolls the five-year period under section 583.340(b). (Brock v. Kaiser Foundation Hospitals (1992) 10 Cal.App.4th 1790, 1801 [13 Cal.Rptr.2d 678] (Brock); see Marcus v. Superior Court (1977) 75 Cal.App.3d 204, 212-213 [141 Cal.Rptr. 890] (Marcus); see generally §§ 1281.2, 1281.4.)[5] Marcus characterized a stay pending contractual arbitration as a stay “ ‘as to all issues, as to all causes of action, and as to all parties, until arbitration is concluded ....’” (Marcus, at p. 209, quoting Cook. v. Superior Court (1966) 240 Cal.App.2d 880, 885 [50 Cal.Rptr. 81].) Bruns cited Marcus as an example of a complete stay of proceedings. (Bruns, supra, 51 Cal.4th at p. 729.) As Bruns explained, the Legislature enacted subdivision (b) with contractual arbitration in mind. (Bruns, at p. 729.) The California Law Revision Commission’s comment to section 583.340(b) states that *1096 ‘‘Isubdivision (b) codifies existing case law,” citing Marcus, supra, 75 Cal.App.3d 204. (17 Cal. Law Revision Com. Rep., supra, at p. 935.)[6]
Those cases are distinguishable. Contractual arbitration and mediation are different. Contractual arbitration is a remedy distinct from an action at law. Its assertion constitutes a plea in abatement to the civil suit. (Brock, supra, 10 Cal.App.4th at pp. 1793, 1795-1796.) A party seeking to enforce contractual arbitration is statutorily entitled to a stay of pending legal actions. (§ 1281.4.) ‘“Once a court grants [a] petihon to compel arbitration and stays the action at law, the achon at law sits in the twilight zone of abatement with the trial court retaining merely a veshgial jurisdiction over matters submitted to arbitration” to determine, upon conclusion of the arbitration proceedings, whether an award on the merits requires dismissal of the legal action. (Brock, at p. 1796.) This is so, in part, because the whole point of contractual arbitration is to obviate the need for an action at law. The court in Brock found the distinction between an achon at law and a contractual arbitration proceeding critical in deciding that a stay pending contractual arbitration tolled the five-year period under section 583.340(b). (Brock, at pp. 1792-1793, 1796.)
By contrast, mediation is not an event outside the lawsuit; it is one means by which a settlement of the lawsuit may be reached. (§ 1775.1, subd. (a); Evid. Code, § 1115; Jeld-Wen, supra, 146 Cal.App.4th at p. 540.) It does not effectively abate the lihgation “ ‘as to all issues, as to all causes of action, and as to all parties.’ ” (Marcus, supra, 75 Cal.App.3d at p. 209.) Section 1775.7 lends further support. That sechon provides that submitting an action to mediation shall not suspend the five-year statute (id., subd. (a)), unless the action “is or remains submitted to mediation . . . more than four years and six months after the plaintiff has filed the action . . .” (id., subd. (b)). The period involved here did not fall within section 1775.7’s timeline. In Howard, supra, 10 Cal.4th 424, we held that the parallel statute governing judicial arbitration (§ 1141.17) “restricts the amount of time that can be tolled automatically as the result of submitting an action to arbitration,” thus effectively preempting automatic tolling under section 583.310 for arbitration conducted in the first four and a half years of the litigation. (Howard, at p. 434.) The provisions of section 1775.7 demonstrate the Legislature’s intent to treat mediation as part of the prosecution of the action.
*1097 The dissent challenges this conclusion by citing general case law and statutory language that describes mediation as an “ ‘alternative’ ” to trial or litigation. (Dis. opn. of Kruger, J., post, at p. 1111.) But these descriptions provide little assistance in determining whether submitting an action to mediation should be considered a step in the prosecution of the action under section 583.340(b). Many pretrial proceedings may terminate the action short of trial: Discovery between the parties may result in a settlement, and a demurrer or summary judgment motion may lead to a dismissal. But that result does not change the fact that these are all “step[s] in [the] action.” (Ray Wong, supra, 199 Cal. at p. 18.) Indeed, section 583.130 sets forth a ‘“policy favoring trial or other disposition of an action on the merits.” (Italics added.) Mediation resulting in a voluntary settlement of the lawsuit by the parties can be one such disposition.
By its terms, the April 3, 2008 order was not a complete stay “ ‘used to stop the prosecution of the action altogether.’ ” (Bruns, supra, 51 Cal.4th at p. 730.) It directed that some discovery continue, and that the parties participate in mediation. Section 583.340(b) is therefore inapplicable. (Bruns, at p. 730.)
Our construction of section 583.340(b) should encourage, rather than deter, agreements to partial stays and to continuances of the trial within the five-year period as the parties deem necessary. (See § 583.130.) Plaintiffs who desire tolling for the relevant period can achieve it by obtaining the defendants’ written stipulation or express oral agreement in court. (§ 583.330.) Conversely, the defendants will have the predictability of knowing that, absent such agreement, a stipulated continuance of the trial date or a partial stay of the proceedings will not later be construed to automatically toll the statute.
3. Estoppel
Gaines argues that defendants, having agreed to the 120-day partial stay, are estopped from claiming that the five-year statute was not tolled for that period. (See § 583.140.) The argument fails.
Equitable estoppel requires that (1) the party to be estopped was aware of the operative facts and either intended that its act or omission be acted upon, or acted in such a way that the party asserting estoppel rightfully believed it was intended; and (2) the party asserting estoppel was unaware of the facts and relied on the other party’s conduct to its detriment. (Lusardi Construction Co. v. Aubry (1992) 1 Cal.4th 976, 994 [4 Cal.Rptr.2d 837, 824 P.2d 643].) The party asserting estoppel has the burden to establish these elements. (Busching v. Superior Court (1974) 12 Cal.3d 44, 53 [115 Cal.Rptr. *1098 241, 524 P.2d 369]; Valerio v. Boise Cascade Corp. (1986) 177 Cal.App.3d 1212, 1221 [223 Cal.Rptr. 592].)
Substantial evidence supports the trial court’s rejection of Gaines’s estoppel argument. (Jordan v. Superstar Sandcars (2010) 182 Cal.App.4th 1416, 1423 [107 Cal.Rptr.3d 5] (Jordan); International Engine Parts, Inc. v. Feddersen & Co. (1998) 64 Cal.App.4th 345, 354 [75 Cal.Rptr.2d 178]; In re Marriage of Dekker (1993) 17 Cal.App.4th 842, 850 [21 Cal.Rptr.2d 642].) The parties’ communications regarding the stay explicitly set forth their expectations. Nowhere did those communications reflect an understanding that the five-year statute would be tolled.
A letter drafted by Aurora and signed by Gaines’s counsel memorialized the agreement between them. The letter stated the parties’ agreement that Aurora would not be required to enter an appearance or answer the fourth amended complaint for 120 days and that Gaines would not file a request for default judgment during that period. The letter also set forth several agreements designed “to preserve the status quo as between themselves concerning the $865,000 Loan and the Longwood Property,” specifically: “(3) Aurora Loan agrees to take no further steps during the Stay to foreclose the $865,000 Loan against the Longwood Property; (4) Aurora Loan agrees to toll as of February 26, 2008 the ‘running’ of the three month period provided for in Civil Code section 2924[, subdivision] (a)(2); (5) Aurora Loan agrees not to post or record or publish a notice of sale as provided for by Civil Code sections 2924[, subdivisions] (a)(3) and [(!)] during the Stay; (6) Aurora Loan and Gaines shall execute a stipulation to toll the recordation of a Notice of Trustee’s Sale during the Stay, which stipulation may be filed with the Los Angeles Superior Court for entry by the court . . . .” Although the letter specifically mentioned the tolling effect of these latter agreements, nowhere does it mention tolling of the five-year period for trial.
A letter from Gaines’s counsel to the remaining defendants set forth terms consistent with those ultimately adopted in the order. Specifically, it referred to staying the litigation “except for the matters set forth below,” which included that the parties were to respond to all previously served and outstanding written discovery and participate in a global mediation of all claims. Again, there was no reference to tolling the five-year dismissal statute.
Finally, Gaines’s application in support of the order represented that the parties mutually agreed to the 120-day stay as a means to defer certain filing deadlines under the “Fast Track” system,[7] which limits the parties’ ability to *1099 stipulate to continuances. (See Gov. Code, §§ 68607, subd. (g), 68616.) The application represented that Aurora “wants to explore fully the possibilities for resolving this case before formally making an appearance and incurring attorneys’ fees and costs in defending itself; but the Fast Tract [s/c] Rules require an appearance and as such an order striking the current trial date and staying this action for 120 days is needed to accomplish these goals.” It further stated that “Countrywide is willing to participate in this mediation only if it does not prejudice its rights to prosecute a summary judgment . . . motion if the mediation is not successful and as such there is a need to strike the current trial date and to stay this litigation for a period of time.” Citing California Rules of Court, rule 3.1332(c), Gaines represented that these circumstances amounted to good cause, and that “[bjecause of the Court’s Fast Track Rules [,] the striking of the current trial date and entry of an order staying this action for a period of time is necessary for the accomplishing of these ends.” Again nothing in the application suggests that the parties intended the stay would extend the five-year period under section 583.310. (Compare Knight v. Pacific Gas & Elec. Co. (1960) 178 Cal.App.2d 923, 926-927, 930-933 [3 Cal.Rptr. 600] [without language regarding five-year period, stipulations to continuances did not estop defendant from seeking dismissal for delay] with City of Los Angeles v. Superior Court (1921) 185 Cal. 405 , 408-411 [197 P. 79] [parties expressly stipulated that an agreed-upon continuance of one year would not count against the five-year period].)
Gaines relies on Tresway Aero, Inc. v. Superior Court (1971) 5 Cal.3d 431 [96 Cal.Rptr. 571, 487 P.2d 1211] and Woley v. Turkus (1958) 51 Cal.2d 402 [334 P.2d 12], but those cases are distinguishable. In Tresway, the plaintiff served a summons on the defendant within three years of filing the complaint. The defendant requested an extension of time beyond the three-year period to answer. Rather than answer, the defendant moved to quash service of summons and to dismiss for nontimely service under former section 581a. (Tresway, at p. 434.) Tresway held the defendant was estopped from invoking the dismissal statute because its request for an extension had “effectively prevented plaintiff from discovering the defect in service until after the statutory period had run.” (Id. at p. 433; see id. at pp. 441^42.) In Woley, the plaintiff, in the fifth year of litigation, filed a motion to advance the case for trial, citing former section 583. (Woley, at p. 404.) The defendant requested a continuance and the parties entered a stipulation to continue the plaintiff’s motion for summary judgment and the trial “ ‘beyond [the] five year period ....’” (Id. at p. 405.) The defendant subsequently moved to dismiss the action based on the plaintiff’s failure to bring the case to trial within five years. The court found the defendant’s continuance request, which expressly acknowledged the five-year deadline, estopped it from subsequently seeking dismissal for failure to prosecute. (Id. at pp. 407-409.) Here, by contrast, the stay in question ended well before the five-year period expired. Nor was there *1100 a mention of that period in either the parties’ correspondence or the prepared order. No basis for estoppel appears on this record.
C. Impossibility, Impracticability, or Futility
A circumstance that does not qualify for automatic tolling under section 583.340(b) may nonetheless be excludable from the five-year period if the circumstance makes it “impossible, impracticable, or futile” to bring the action to trial. (§ 583.340(c); accord, Bruns, supra, 51 Cal.4th at p. 726.) Gaines invokes this provision. In deciding whether these exceptions are met, the court must consider “ ‘all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.’ ” (Bruns, at p. 730, quoting Moran v. Superior Court (1983) 35 Cal.3d 229, 238 [197 Cal.Rptr. 546, 673 P.2d 216].)
“The question of impossibility, impracticability, or futility is best resolved by the trial court, which ‘is in the most advantageous position to evaluate these diverse factual matters in the first instance.’ [Citation.] The plaintiff bears the burden of proving that the circumstances warrant application of the . . . exception. [Citation.] . . . The trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the trial court abused its discretion. [Citations.]” (Bruns, supra, 51 Cal.4th at p. 731.) Under that standard, “[t]he trial court’s findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.” (Haraguchi v. Superior Court (2008) 43 Cal.4th 706, 711-712 [76 Cal.Rptr.3d 250, 182 P.3d 579], fns. omitted.)[8]
The statute refers to excluding “the time during which . . . [bringing the action to trial, for any other reason, was impossible, impracticable, or futile.” (§ 583.340(c).) The California Law Revision Commission comment to section 583.340 states: “Under Section 583.340 the time within which an action must be brought to trial is tolled for the period of the excuse, regardless whether a reasonable time remained at the end of the period of the *1101 excuse to bring the action to trial. This overrules cases such as State of California v. Superior Court, 98 Cal.App.3d 643 [159 Cal.Rptr. 650] . . . (1979), and Brown v. Superior Court, 62 Cal.App.3d 197 [132 Cal.Rptr. 916] . . . (1976).” (17 Cal. Law Revision Com. Rep., supra, at p. 936.) Thus, a condition of impossibility, impracticability, or futility need not take the plaintiff beyond the five-year deadline to be excluded; it will be excluded even if the plaintiff has a reasonable time remaining after the period to bring the case to trial. (Sierra Nevada, supra, 217 Cal.App.3d at p. 471.)
But what is meant by establishing a condition of impossibility, impracticability, or futility in the first instance? The answer depends on both the timing and nature of the interference. It is well established that “ ‘ ‘“[e]very period of time during which the plaintiff does not have it within his power to bring the case to trial is not to be excluded in making the computation.” [Citation.]’ ” (Bruns, supra, 51 Cal.4th at p. 731, quoting Sierra Nevada, supra, 217 Cal.App.3d at p. 472.) “ ‘Time consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court’s calendar [is] not within the contemplation of these exceptions.’ ” (Bruns, at p. 731, quoting Baccus v. Superior Court (1989) 207 Cal.App.3d 1526, 1532 [255 Cal.Rptr. 781]; see Bruns, at p. 732; accord, Crown Coach Corp. v. Superior Court (1972) 8 Cal.3d 540, 548 [105 Cal.Rptr. 339, 503 P.2d 1347]; J. C. Penney, supra, 52 Cal.2d at p. 670.) This rule reflects the Legislature’s understanding that a reasonably diligent plaintiff should be able to bring the case to trial within the relatively lengthy period of five years notwithstanding such ordinary delays. (See § 583.130 [‘“a plaintiff shall proceed with reasonable diligence in the prosecution of an action . . .”].) To hold otherwise would allow plaintiffs to litigate piecemeal every period, no matter how short, in which it was literally impracticable to try the case, thus rendering the statute ‘“utterly indeterminate, subjective, and unadministerable.” (Sierra Nevada, at p. 472.)
Here, for example, when the 120-day stay was entered on April 3, 2008, the scheduled trial date was five months out, beyond the period of the stay. Aurora, a recently added defendant, had not made an appearance, answered the amended complaint, or conducted discovery, and Countrywide anticipated filing a motion for summary judgment. It would thus be illusory to ask if it was impracticable for Gaines to try the case during the period of the stay because the posture of the case would not have allowed for such a result. Rather, in these types of circumstances, courts have focused on the extent to which the conditions interfered with the plaintiff’s ability to ”mov[e] the case to trial” during the relevant period. (De Santiago v. D & G Plumbing, Inc. (2007) 155 Cal.App.4th 365, 371 [65 Cal.Rptr.3d 882]; accord, Tamburina v. Combined Ins. Co. of America (2007) 147 Cal.App.4th 323, 335 [54 Cal.Rptr.3d 175] (Tamburina).)
*1102 Additionally, when the delay involves the time necessary for the parties to conduct ordinary incidents of proceedings leading up to the trial, the interference must deprive the plaintiff of a “ ‘substantial portion’ of the five-year period for prosecuting the lawsuit” in order to qualify as a circumstance of impracticability. (Tamburina, supra, 147 Cal.App.4th at p. 335, quoting Sierra Nevada, supra, 217 Cal.App.3d at p. 473; see Tamburina, at pp. 333-334.) This is because ordinary delays, even ones beyond the plaintiffs control, are already accounted for in the five-year period. In Tamburina, for example, the parties’ stipulations established that the plaintiff’s counsel suffered an unusually lengthy illness which deprived Tamburina of a substantial portion of the five-year period (424 days) to prepare for trial. (Tamburina, at pp. 335-336; but see Sierra Nevada, at p. 472 [generally, counsel’s routine illness is treated in the same manner as the usual and ordinary proceedings attendant to moving the case to trial].) Here, the delay was occasioned by the parties’ agreement to participate in mediation; the need for Aurora to make an appearance and to conduct discovery; and the need for Aurora and Countrywide to file certain defensive pleadings. These are ordinary steps in the prosecution of the action. It was therefore necessary for Gaines to demonstrate that the delay had a significant enough impact on the litigation to elevate it from an ordinary circumstance to a circumstance of impracticability. This determination requires a fact-specific inquiry in light of all of the circumstances in the case. (Bruns, supra, 51 Cal.4th at pp. 730-731.)
On this record, the trial court was within its discretion to conclude that the time attributable to the partial stay did not qualify for tolling under section 583.340(c). The parties participated in mediation during that time, which was a meaningful attempt to move the litigation forward to resolution. Shortly after the mediation and during the stay period, Gaines reached a settlement with United Mortgage Company and filed a request to dismiss that defendant. Other named defendants were relieved of certain filing deadlines, but not for an inordinately long period. And nothing prevented Gaines from conducting her own trial preparation during this time. Indeed, Gaines announced ready for trial against all named defendants in August 2009, three years into the litigation. Nothing about these circumstances elevated an ordinary delay agreed to by the parties into an extraordinary one.
Additionally, case law both predating and postdating the 1984 statutory revision has long held that “[f]or the tolling provision of section 583.340[(c)] to apply, there must be ‘a period of impossibility, impracticability or futility, over which plaintiff had no control,’ ” because the statute is designed to prevent avoidable delay. (Sanchez v. City of Los Angeles, supra, 109 Cal.App.4th at p. 1273, quoting New West Fed. Savings & Loan Assn. v. Superior Court (1990) 223 Cal.App.3d 1145, 1155 [273 Cal.Rptr. 37]; accord, Bruns, supra, 51 Cal.4th at p. 731; Christin v. Superior Court (1937) 9 Cal.2d 526, 532 [71 P.2d 205]; Tamburina, supra, 147 Cal.App.4th at p. 328.) The *1103 California Law Revision Commission affirmed this understanding in its comment to section 583.340: “Subdivision (c) codifies the case law ‘impossible, impractical, or futile’ standard. The provisions of subdivision (c) must be interpreted liberally, consistent with the policy favoring trial on the merits. See Section 583.130 (policy statement). Contrast Section 583.240 and Comment thereto (strict construction of excuse for failure to serve within prescribed time). This difference in treatment recognizes that bringing an action to trial, unlike service, may be impossible, impracticable, or futile due to factors not reasonably within the control of the plaintiffT (17 Cal. Law Revision Com. Rep., supra, at p. 936, italics added.) Our colleagues in dissent challenge this reading of the statute (dis. opn. of Kruger, L, post, at pp. 1113-1114), but long-standing case law, including our recent pronouncement in Bruns, confirms it {Bruns, at p. 731). Indeed, as the commission’s comment demonstrates, our dissenting colleagues’ emphasis on the policy in favor of trial on the merits in construing the provisions of this chapter (dis. opn. of Kruger, L, post, at pp. 1108, 1110, 1115; § 583.130) derives from the very same premise.
The trial court was within its discretion to conclude that the circumstances of the partial stay were not beyond Gaines’s control. Gaines voluntarily agreed to mediation upon the belief that it would “possib[ly] . . . resolv[e] all of th[e] case or at least major portions of it[,] . . . thereby simplifying and shortening the trial of any unresolved issues.” Gaines also agreed to the partial stay with full understanding that it would relieve defendants of certain filing deadlines during the specified period. Gaines represented to the court that the partial stay would benefit all parties by saving attorneys’ fees and costs during the mediation period.
Even after the order was entered, Gaines largely retained control over the proceedings. The purpose of mediation is to resolve disputes “in a fair, timely, appropriate, and cost-effective manner” without derailing the litigation. (§ 1775, subd. (a).) Parties participate voluntarily and may withdraw at any time. (Jeld-Wen, supra, 146 Cal.App.4th at p. 541; Cal. Rules of Court, rule 3.853(2).) “Even after a case has been ordered to mediation, the mediator must inform the parties that participation in mediation is completely voluntary, refrain from coercing a party to continue its participation in the mediation and respect the right of each party to decide the extent of its participation or withdraw from the mediation. (Rule 3.853 . . . .) In fact, unless the parties have agreed to a binding award, any party who voluntarily enters mediation may revoke its consent and withdraw from the dispute resolution process. (Bus. & Prof. Code, § 467.7, subd. (a); Kirschenman v. Superior Court (1994) 30 Cal.App.4th 832, 835 [36 Cal.Rptr.2d 166] . . . .)” (Jeld-Wen, at p. 541, citation omitted.) Upon the filing of a statement of nonagreement by the mediator, Gaines was entitled to request that the original trial date be reinstated, or that she receive priority for a new trial date. *1104 (§ 1775.9, subd. (b).) There is no reason to believe that the stay, entered at the parties’ request, could not have been similarly vacated at their request. Indeed, the court order facilitated plaintiffs return to court by designating a trial-setting conference on July 16, 2008, during the period of the stay and two months before the originally scheduled trial date.
Gaines further argues that the trial court abused its discretion by failing to exclude the 97 days between the date the partial stay was supposed to expire and the date it was actually lifted, during which time there was a series of judicial assignments. Assuming, without deciding, that the stay did not terminate automatically, we reject plaintiffs argument with one minor exception.
By its own terms, the partial stay was to last 120 days (i.e., from Apr. 3, 2008, to Aug. 1, 2008). At the trial-setting conference on July 16, 2008, the parties appeared before Judge Kalin, sitting temporarily for Judge Lee, who was out of the country. Judge Kalin indicated that the case would be reassigned. On September 4, 2008, the case was reassigned to Judge Barbara Meyers, but she was peremptorily challenged on September 12, 2008. (§ 170.6.) On October 2, 2008, the case was reassigned to Judge Rex Heeseman, and a status conference was set for November 6, 2008. On November 6, 2008, Judge Heeseman lifted the stay.
We have held that delay attributable to trial court reassignment following a party’s exercise of a section 170.6 peremptory challenge should be excluded. (Hartman v. Santamarina (1982) 30 Cal.3d 762, 768 [180 Cal.Rptr. 337, 639 P.2d 979].) Here that delay amounted to 20 days (from Sept. 12, 2008, to Oct. 2, 2008). That period, standing alone, does not overcome plaintiff’s 82-day deficit.
As for the remaining period, the trial court was within its discretion to conclude that Gaines failed to proceed diligently. “A plaintiff has an obligation to monitor the case in the trial court, to keep track of relevant dates, and to determine whether any filing, scheduling, or calendaring errors have occurred.” (Jordan, supra, 182 Cal.App.4th at p. 1422.) After mediation concluded, it was Gaines’s duty to seek an order from the trial court lifting the stay, if necessary, and rescheduling the trial date. (Cf. Howard, supra, 10 Cal.4th at p. 434.) There is no evidence that Gaines attempted to do either during the 97-day period in question. Although there were a series of judicial reassignments, Gaines appeared before Judge Kalin, sitting temporarily for Judge Lee, on July 16, 2008. There is no reason apparent from the record why Judge Kalin could not have handled these requests.
*1105 In short, the trial court was within its discretion to find that the conduct of mediation and partial stay of proceedings were not so exceptional, extenuated, or beyond Gaines’s control as to qualify as a circumstance of impossibility, impracticability, or futility under section 583.340(c). Accordingly, the case was properly dismissed under the mandatory provisions of section 583.360.
While this conclusion brings an end to plaintiffs suit, that is what the five-year statute is designed to do. The five-year rule is mandatory and dismissal for noncompliance is required. (§ 583.360, subd. (b).) The dissent protests that today’s result “reward[sj plaintiff for working cooperatively with an opposing party by depriving her of her day in court.” (Dis. opn. of Kruger, J., post, at p. 1105.) While attempts to work cooperatively are to be lauded, they do not absolve litigants from the obligation to prosecute claims within the statutory guidelines. Established case law advised Gaines to seek an express stipulation from the parties that the agreed-upon postponements would extend the five-year period. (J. C. Penney, supra, 52 Cal.2d at p. 669.) Gaines did not do so. Our holding affords due deference to the trial court’s unique ability to determine, based on all of the facts before it, that Gaines did not demonstrate a circumstance of impossibility, impracticability, or futility arising from this period. (Bruns, supra, 51 Cal.4th at p. 731.)
III. DISPOSITION
The judgment of the Court of Appeal is affirmed.
Cantil-Sakauye, C. J., Werdegar, J., Chin, J., and Cuéllar, J., concurred.

 All further undesignated statutory references are to the Code of Civil Procedure.

 For clarity and ease of reading, we simply refer to plaintiff as Gaines throughout the opinion except as it becomes necessary to distinguish between Fannie Marie and her son, Milton.

 Its ruling as to Lehman is not before us.

 We have no occasion to consider how the parties’ participation in informal settlement discussions might affect a stay of proceedings (see dis. opn. of Kruger, J., post, at p. 1111), and we offer no opinion on that question.

 Contractual arbitration is to be distinguished from judicial arbitration, which we discuss separately at page 1091, ante, and page 1096, post. (See Nanfito v. Superior Court (1991) 2 Cal.App.4th 315, 318-319 [2 Cal.Rptr.2d 876]; 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 580, pp. 1101-1102.)

 As the Court of Appeal observed in Sierra Nevada Memorial-Miners Hospital, Inc. v. Superior Court (1990) 217 Cal.App.3d 464, 469 [266 Cal.Rptr. 50] (Sierra Nevada): “Section 583.340 was added to the code in 1984 without change as proposed by the California Law Revision Commission. (See 17 Cal. Law Revision Com. Rep. (1984) pp. 905, 935.) For that reason the report of the commission is entitled to substantial weight in construing the statute, particularly since the Law Revision Commission’s comment which accompanied the proposed statute through the legislative process is brief.”

 Officially titled the Trial Court Delay Reduction Act. (Gov. Code, § 68600 et seq.)

 Gaines argues that the abuse of discretion standard is too amorphous to allow for meaningful appellate review. The standard, however, has long been applied in this context. (Raggio v. Southern Pacific Co. (1919) 181 Cal. 472 [185 P. 171]; Perez v. Grajales (2008) 169 Cal.App.4th 580, 590-591 & fn. 9 [86 Cal.Rptr.3d 784]; Sanchez v. City of Los Angeles, supra. 109 Cal.App.4th at p. 1271; Hughes v. Kimble (1992) 5 Cal.App.4th 59, 71 [6 Cal.Rptr.2d 616]; cf. Brunzell Constr. Co. v. Wagner (1970) 2 Cal.3d 545, 555 [86 Cal.Rptr. 297, 468 P.2d 553] [trial court is in the best position to evaluate impracticability in the first instance].) We recently affirmed its application in Bruns, supra. 51 Cal.4th at page 731. Gaines provides no persuasive justification to revisit this settled rule.