Filed 11/5/24  Marriage of Reskey CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of LAURA and KEVIN RESKEY. | |
| LAURA RESKEY,<br><br>    Appellant,<br><br>        v.<br><br>KEVIN RESKEY,<br><br>    Respondent. | G062657<br><br>(Super. Ct. No. 10D011259)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Carmen R. Luege, Judge. Affirmed.

Quinn & Dworakowski, David Dworakowski and Stephane Quinn for Appellant.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica Barbero for Respondent.

\* \* \*

Laura Reskey appeals from a postjudgment order in which the trial court terminated her right to continue receiving monthly spousal support payments from her ex-husband, Kevin Reskey, on the ground that Laura was estopped to deny she had remarried. We affirm.[1]

FACTUAL AND PROCEDURAL BACKGROUND

Laura and Kevin married in June 1993 and separated in August 2010.[2] In November 2011, they executed a stipulated marital settlement agreement, which was entered as a judgment later that month. The judgment ordered Kevin to pay spousal support to Laura in the amount of $8,500 per month "continuing until the remarriage of [Laura], the death of either party, further stipulation of the parties, or further court order, whichever occurs first."

On July 16, 2021, Kevin filed a request for order (RFO) asking the trial court to terminate his spousal support obligation on the ground that Laura had remarried or, alternatively, to reduce or eliminate spousal support based on a material change in circumstances, including that Laura was cohabiting with her fiancé, Thomas Charles "Chuck" Rudolph (Rudolph); her income had significantly increased since the spousal support order was

_____

[1] The trial court also found Kevin proved by a preponderance of the evidence that Laura had remarried. Because we affirm the court's order terminating spousal support based on the doctrine of equitable estoppel, we need not reach this additional basis for the court's ruling.

[2] As is customary in family law proceedings, and because the parties share a surname, we refer to the parties by their first names.

2

issued; and, despite having received a *Gavron* warning, she had failed to make a good faith effort to become self-supporting.[3] Kevin's RFO was based, in part, on evidence that Rudolph had, on social media, announced that he had married and referred to Laura as his "'wife.'" Kevin initially continued to make spousal support payments pending his RFO, but by September 2021, Laura had also changed her status on social media from engaged to married. This confirmed Kevin's belief that his support obligations had come to an end pursuant to the terms of the marital settlement agreement and judgment, and he stopped making spousal support payments to Laura. On October 5, 2021, at Laura's request, the court issued an order directing Kevin to show cause why he should not be held in contempt for failing to pay spousal support. After a trial, the court found Kevin not guilty of contempt based on lack of intent due to his reliance on Laura and Rudolph's social media posts about their married status.[4] The court also reduced Kevin's monthly spousal support payments to $4,250 on a temporary basis.

Laura filed an RFO for need-based attorney fees and costs in February 2022, and in May 2022 she filed another RFO requesting an

_____

[3] In *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 712, the court held spousal support cannot be terminated early unless the party receiving support has had reasonable advance warning that he or she is expected to become self-sufficient after a reasonable time. "In 1996 . . . the Legislature codified the *Gavron* warning in Family Code section 4330, subdivision (b) first making it mandatory then later discretionary." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55–56, fn. omitted.)

[4] The trial court noted that, at the time Kevin stopped paying spousal support in September 2021, Laura had not filed a response to his RFO denying Kevin's assertion that she had remarried.

3

emergency order to reinstate the portion of spousal support terminated by the trial court after the contempt hearing.

The three outstanding RFOs came on for an evidentiary hearing in January 2023. Based on the evidence before it, the court found Laura was equitably estopped "from denying her public representations and conduct which show she has remarried." The court alternatively found Kevin had shown by a preponderance of the evidence that Laura remarried, meaning Kevin's obligation to pay spousal support had terminated. Having ruled that Kevin's support obligations had terminated, the court did not rule on Kevin's alternative request for a downward adjustment in Laura's support payments based on a material change in circumstances.

Laura filed a timely notice of appeal.

DISCUSSION

I.

STANDARD OF REVIEW

Before a trial court may modify a spousal support order, the party seeking the modification must show a material change in circumstances after the support order was entered. (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246; *In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.)

We review an order modifying spousal support for abuse of discretion. "We start with the presumption the trial court's decision was correct; the appealing party must affirmatively show error. [Citation.] "'"So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it."'"'" (*In re Marriage of T.C. & D.C.* (2018) 30 Cal.App.5th 419, 423–424.)

4

"""Whether a modification of a spousal support order is warranted depends upon the facts and circumstances of each case, and its propriety rests in the sound discretion of the trial court the exercise of which this court will not disturb unless as a matter of law an abuse of discretion is shown." [Citation.] An abuse of discretion occurs "where, considering all the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances." [Citation.]' [Citation.] We '"must accept as true all evidence tending to establish the correctness of the trial judge's findings, resolving all conflicts in the evidence in favor of the prevailing party and indulging in all legitimate and reasonable inferences to uphold the judgment."'" (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 898–899.) Where the trial court makes findings of fact adverse to the appellant in a statement of decision, the appellant must demonstrate as a matter of law that those findings are not supported by the record or that the trial court otherwise abused its discretion as a matter of law. (*Id.* at p. 899.)

## II.

### LAURA WAS EQUITABLY ESTOPPED FROM DENYING HER REMARRIAGE

Laura challenges the trial court's finding that she was equitably estopped to deny she had married Rudolph.

"Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code, § 623.) "'Generally speaking, the doctrine of equitable estoppel is a rule of fundamental fairness whereby a party is precluded from benefiting from his inconsistent conduct which has induced reliance to the detriment of another.'"

5

(*Adoption of S.S.* (2021) 72 Cal.App.5th 607, 631, quoting *In re Marriage of Valle* (1975) 53 Cal.App.3d 837, 840.) "As our Supreme Court has repeatedly emphasized, a finding of estoppel requires some act or representation by the party to be estopped, on which the party seeking estoppel has relied to its detriment: '[t]he doctrine of equitable estoppel is founded on concepts of equity and fair dealing.'" (*Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1209.)

"Equitable estoppel requires that (1) the party to be estopped was aware of the operative facts and either intended that its act or omission be acted upon, or acted in such a way that the party asserting estoppel rightfully believed it was intended; and (2) the party asserting estoppel was unaware of the facts and relied on the other party's conduct to its detriment." (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1097.) Whether an estoppel exists is a factual question, which we review for substantial evidence. (*In re Marriage of Kelkar* (2014) 229 Cal.App.4th 833, 847.)

We conclude substantial evidence supports the trial court's finding that Laura was equitably estopped to deny she was remarried. Laura was certainly aware of the true facts regarding her marital status; indeed, the facts regarding her remarriage were peculiarly within her knowledge. Although Laura may have hoped Kevin would not see or rely on her public marriage announcement to cease his spousal support payments, she clearly intended her announcement to be seen and relied on generally. The fact that she made a public announcement on social media that she had gotten married and never corrected or retracted it was sufficient to cause Kevin to "rightfully believe[]" he was intended to and reasonably could rely on her announcement. (*Gaines v. Fidelity National Title Ins. Co.*, *supra*, 62 Cal.4th at p. 1097.) When Kevin stopped his spousal support payments in early

September, he had no reason to disbelieve Laura's public announcement that she had gotten married.

Finally, Kevin relied to his detriment on Laura's public announcement that she had married. Under Family Code section 4337, the termination of spousal support on remarriage is self-executing; in other words, the supporting spouse's obligation to pay spousal support terminates by operation of law upon the supported party's remarriage, without any need for the supporting spouse to seek relief from a court. (*In re Marriage of Thornton* (2002) 95 Cal.App.4th 251, 255; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2021) ¶¶ 6:1103–6:1103.1, p. 6-594.) Yet when Kevin, in reliance on Laura's admission that she had remarried, ceased making spousal support payments, Laura initiated a contempt proceeding against him. There is no doubt being subjected to a contempt proceeding is a very serious matter. A contempt trial is a quasi-criminal proceeding that can result in criminal fines or incarceration. (Code Civ. Proc., §§ 1209, subd. (a)(5), 1218, 1218.5; *People v. Gonzalez* (1996) 12 Cal.4th 804, 816.) At a minimum, by being forced to expend attorney fees to defend himself against the quasi-criminal contempt charge initiated by Laura, Kevin suffered a detriment.[5]

As the court noted in *In re Marriage of Valle, supra*, 53 Cal.App.3d at page 842, "the very essence of equitable estoppel is to prevent a

[5] The trial court also based its finding of detriment on Kevin's payment of his own (and some of Laura's) attorney fees in connection with Kevin's RFO to modify support and Kevin's cessation of his support payments to Laura. Because the detriment Kevin suffered as a result of the contempt proceeding initiated by Laura is sufficient to support the court's equitable estoppel finding, we need not address those additional grounds.

7

party from blowing hot and cold and from taking advantage of his inconsistent conduct to the detriment of another." That is exactly what Laura has done here. She has blown hot and cold on whether she remarried and tried to take advantage of her inconsistent statements to continue to receive spousal support from Kevin. Indeed, the trial court expressly found Laura's denials that she married Rudolph were "untruthful and deceitful." This is exactly the type of case in which equitable estoppel properly applies. (See *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 488 [equitable estoppel is based on ""'[t]he vital principle is that [a person] who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both"'"]; *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 486, fn. omitted [when equitable estoppel applies, "the court in effect closes its ears to a point—a fact, argument, claim, or defense—on the ground that to permit its assertion would be intolerably unfair. It is commonly said that the party to be estopped, having conducted himself in manner X, will 'not be heard' to assert Y"].)

DISPOSITION

The postjudgment order is affirmed. Respondent to recover costs on appeal.


GOODING, J.



GOETHALS, ACTING P. J.



MOTOIKE, J.