Filed 2/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STATE OF CALIFORNIA ex rel. ANNA MARIA CHRISTINA SILLS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BAHAR GHARIB-DANESH et al., <br><br> Defendants and Respondents. | B312459 <br><br> (Los Angeles County Super. Ct. No. BC603624) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Reversed.

Cotchett, Pitre & McCarthy, Justin T. Berger, Robert B. Hutchinson, Carlos Urzua and Theresa Vitale for Plaintiff and Appellant.

Rob Bonta, Attorney General, Martin H. Goyette, Assistant Attorney General, Jacqueline Dale, Maria Ellinikos and Brendan Ruddy, Deputy Attorneys General, as Amicus Curiae on behalf of Plaintiff and Appellant.

Heather B. Hoesterey, Antonio A. Celaya and Michelle Perz, Department of Insurance Attorneys, for Ricardo Lara,

Insurance Commissioner, as Amicus Curiae on behalf of Plaintiff and Appellant.

Kettellaw and David A. Kettel for Defendants and Respondents Lana Elizabeth Montes, United Health Services, Charles Michael Boyer, Na Young Eoh, Pain Free Management Co., Inc., Tushar Ramnik Doshi, Anthony Danesh and Joanna Munguia.

Novian & Novian, Farhad Novian and Andrew B. Goodman for Defendant and Respondent Behnoush Zarrini.

Zhong Lun Law Firm and Leodis C. Matthews for Defendant and Respondent John Terrence.

Law Offices of Rob D. Cucher and Rob D. Cucher for Defendants and Respondents Nira Hariri and Encino Care Pharmacy, Inc.

Leech Tishman Fuscaldo & Lampl, Fadi K. Rasheed and Azin G. Valafar for Defendants and Respondents Rodrigo T. Sanchez and Sanchez Chiropractic, Inc.

Green & Associates and Tracy Green for Defendants and Respondents Bahar Gharib-Danesh, Bahar Gharib-Danesh Chiropractic, Inc., Pain Relief Health Center, LLC, and Pain Free Diagnostics.

_____

**INTRODUCTION**

Plaintiff and appellant Anna Maria Christina Sills brings this qui tam case on behalf of the State of California alleging defendant and respondent Bahar Gharib-Danesh, D.C. and other defendants and respondents engaged in medical insurance

2

fraud.[1] Sills asserts the alleged fraud victimized the state workers' compensation system, including the State Compensation Insurance Fund, as well as Medi-Cal, and brought her action under the California False Claims Act (CFCA; Gov. Code, § 12650 et seq.) and the California Insurance Frauds Prevention Act (IFPA; Ins. Code, § 1871 et seq.). Under both of these acts, an individual may bring an action on behalf of the state to recover for fraud committed against the government. However, she must first file the action under seal and in camera. Only specified government entities initially receive a copy of the complaint: the Attorney General in the case of the CFCA, and the Insurance Commissioner (Commissioner) and the local district attorney in the case of the IFPA. This process gives the relevant government entities an opportunity before the existence of the complaint becomes public to investigate the claims of fraud, to notify any additional government agencies with a potential interest in the matter, to consider whether to bring charges other than what is contained in the complaint, and to decide whether the agencies themselves will intervene and prosecute the civil action.

While the action is under seal for these purposes, no one may serve the complaint on the defendant(s). Only when the

---

[1] A "qui tam" plaintiff is a private party who litigates a case on behalf of the state. " '*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means "who pursues this action on our Lord the King's behalf as well as his own." ' " (*San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal.App.4th 438, 442, fn. 2; see also *Vermont Agency of Natural Resources v. United States ex rel. Stevens* (2000) 529 U.S. 765, 768, fn. 1 [120 S.Ct. 1858, 146 L.Ed.2d 836].)

relevant government agency notifies the court of its decision regarding whether it will intervene in the action can the seal be lifted. And only when the court lifts the seal in connection with this intervention decision can the summons and complaint be served on the defendant(s) and litigation of the action begin. Prior to that time, the qui tam plaintiff is not allowed to take any steps to prosecute the case.

In this matter, Sills filed her qui tam complaint under seal and in camera as statutorily required. It remained under seal for 962 days, until the court was informed the state had decided not to intervene, and the court issued an order lifting the seal. After the complaint was unsealed and Sills was permitted to prosecute the action, service was effected on defendants. Discovery and motion practice proceeded except for periods when the case was stayed because of pending criminal prosecutions of certain defendants named in the qui tam complaint.

Before the matter reached trial, however, the trial court dismissed the action pursuant to the "five-year rule" set out in Code of Civil Procedure[2] section 583.310. That section provides that "[a]n action shall be brought to trial within five years after the action is commenced against the defendant." (*Ibid.*) In computing the five-year period, the court included the 962 days during which the case had been kept under seal and in camera. As we explain below, this was error. The court should have excluded the time during which the action was kept under seal for purposes of the government's intervention decision from computation of the five-year period under section 583.340,

_____

[2] Unspecified statutory references are to the Code of Civil Procedure, unless otherwise indicated.

4

subdivision (b) (section 583.340(b)), which provides that the time during which an action is "stayed" is to be excluded in computation of the five-year period.  Excluding the 962 days during which the action was under seal, as well as other periods the parties agree should be excluded in the computation of the five-year period, the case had not reached the five-year mark when the court granted the motion to dismiss.  Accordingly, we reverse the judgment of dismissal, reinstate the action, and remand the case to the trial court for further proceedings.

## THE CFCA AND IFPA

### A.  The CFCA

The CFCA's purpose " 'is to protect the public fisc.' "  (*State of California v. Altus Financial, S.A.* (2005) 36 Cal.4th 1284, 1297, quoting *City of Hawthorne ex rel. Wohlner v. H & C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1677.)  The Legislature enacted the CFCA in 1987 " 'to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities.  [Citation.]  As relevant here, the [CFCA] permits the recovery of civil penalties and treble damages from any person who "[k]nowingly presents or causes to be presented [to the state or any political subdivision] . . . a false claim for payment or approval."  [Citation.] . . .  [¶]  The [CFCA] authorizes the Attorney General (in the case of alleged violations involving state funds) or the prosecuting authority of a political subdivision (in the case of alleged violations relating to funds of the political subdivision) to bring a civil action for violations of its provisions.  [Citation.]  Subject to certain limitations, the [CFCA] permits a private person (referred to as a "qui tam plaintiff" or a "relator") to bring such an action on behalf of a governmental agency.  [Citation.]' "

(*San Francisco Unified School Dist. ex rel. Contreras v. First Student, Inc.* (2014) 224 Cal.App.4th 627, 637, quoting *Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 494-495.)

When a qui tam plaintiff brings a CFCA action, they must file the complaint in camera and the complaint "may remain under seal for up to 60 days." (Gov. Code, § 12652, subd. (c)(2).) The qui tam plaintiff is prohibited from serving the complaint on any defendant "until after the complaint is unsealed." (*Ibid*.) Instead, the qui tam plaintiff must serve the complaint on the Attorney General along with "a written disclosure of substantially all material evidence and information the person possesses." (*Id.*, subd. (c)(3).)

If the complaint alleges "violations that involve state funds but not political subdivision funds, the Attorney General may elect to intervene and proceed with the action." (Gov. Code, § 12652, subd. (c)(4).) The Attorney General must make this election within 60 days of receiving the complaint and written disclosure (*ibid*), although it "may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal," which also extend the deadline for the Attorney General to notify the court of its election regarding intervention. (*Id.*, subd. (c)(5-6).) Motions requesting an extension of the sealing period "may be supported by affidavits or other submissions in camera." (*Id.*, subd. (c)(5).) The court then approves, disapproves, or limits such requested extensions based on the showing made to protect against unwarranted delays.

If the Attorney General elects to intervene, then "the seal shall be lifted," and the state is made a party to the action with "the primary responsibility for prosecuting the action" through the Attorney General. (Gov. Code, § 12652, subds. (c)(6)(A),

6

(e)(1).) If the Attorney General elects not to intervene, then "the seal shall be lifted and the qui tam plaintiff shall have the right to conduct the action." (*Id.*, subd. (c)(6)(B).)[3] When the state declines to intervene, "the qui tam plaintiff shall have the same right to conduct the action as the Attorney General or prosecuting authority would have had if it had chosen to proceed." (*Id.*, subd. (f)(1).) Regardless of whether any government entity intervenes, the qui tam plaintiff is entitled to a percentage of any recovery obtained on behalf of the government, although her share will be higher if she prosecutes the action and lower if the state and/or a political subdivision prosecute the action. (*Id.*, subd. (g)(2).)

## B. The IFPA

The IFPA, originally enacted in 1993,[4] is codified in Insurance Code sections 1871 through 1879.8. The legislative findings and declarations regarding the IFPA state, in part, that the Legislature "intended to permit the full utilization of the expertise of the [C]ommissioner and the [Department of Insurance] so that they may more effectively investigate and discover insurance frauds, halt fraudulent activities, and assist and receive assistance from federal, state, local, and

---

[3] The CFCA also sets forth the procedures to be followed if the complaint alleges violations involving "political subdivision funds." (Gov. Code, § 12652, subd. (c)(7-8).) Those procedures are largely similar except that in addition to the Attorney General and the qui tam plaintiff, the appropriate prosecuting authorities for the political subdivisions are involved in the notification process and the intervention decision.

[4] Statutes 1993, chapter 120, section 3.3 (Assem. Bill No. 1300), effective July 16, 1993.

administrative law enforcement agencies in the prosecution of persons who are parties in insurance frauds." (Ins. Code, § 1871, subd. (a).)

The complaint at issue here asserts several causes of action under Insurance Code section 1871.7, subdivisions (a) and (b), which provide, in relevant part, "(a) It is unlawful to knowingly employ runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits pursuant to Division 4 (commencing with Section 3200) of the Labor Code [relating to worker's compensation insurance] or to procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer. [¶] (b) Every person who violates any provision of this section or Section 549, 550, or 551 of the Penal Code shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation, as defined in Section 3207 of the Labor Code or pursuant to a contract of insurance." (*Ibid.*)

The Commissioner or a district attorney "may bring a civil action" under Insurance Code section 1871.7.[5] (*Id.*, subd. (d).) Relevant to this case, an "interested person[ ]" can also "bring a

_____

[5] Before the Commissioner can bring an action, he or she must present their evidence "to the appropriate local district attorney for possible criminal or civil filing," and the Commissioner "may proceed with the action" only "[i]f the district attorney elects not to pursue the matter due to insufficient resources." (Ins. Code, § 1871.7, subd. (d).)

civil action for a violation" of Insurance Code section 1871.7 "in the name of the state." (*Id.*, subd. (e)(1).) The procedures governing such an IFPA action are similar to the procedures governing a qui tam action under the CFCA. First, "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the district attorney and [C]ommissioner. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The local district attorney or [C]ommissioner may elect to intervene and proceed with the action within 60 days after he or she receives both the complaint and the material evidence and information. If more than one governmental entity elects to intervene, the district attorney shall have precedence." (Ins. Code, § 1871.7, subd. (e)(2).)

"The district attorney or [C]ommissioner may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal" which extend the deadline for the district attorney or Commissioner to notify the court of its election regarding intervention. (Ins. Code, § 1871.7, subd. (e)(3-4).) As is true for the CFCA, motions to extend the sealing period for further investigation under the IFPA "may be supported by affidavits or other submissions in camera" (*ibid.*), and the court must approve, disapprove, or limit such requested extensions based on the showing made to protect against unwarranted delays. Before the expiration of the seal period, "the district attorney or [C]ommissioner shall either: [¶] (A) Proceed with the action, in which case the action shall be conducted by the district attorney or [C]ommissioner[;] [¶] [or] (B) Notify the court that it declines to take over the action, in

9

which case the person bringing the action shall have the right to conduct the action." (*Id.*, subd. (e)(4); see also *id.*, subd. (f)(3) ["If the district attorney or [C]ommissioner elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action"].)

The IFPA also contains provisions concerning parallel criminal actions. As relevant here, if a civil action under Insurance Code section 1871.7 "and a criminal action are pending against a defendant for substantially the same conduct . . . the civil action shall be stayed until the criminal action has been concluded at the trial court level." (*Id.*, subd. (f)(4).)

If the IFPA claims are brought by an interested person, that interested person is entitled to a share of any recovery, based on various factors set out in Insurance Code section 1871.7, subdivision (g). The interested person's share of a recovery will generally be higher where the district attorney and Commissioner have declined to prosecute the action, and the interested person therefore has pursued it herself. (*Id.*, subd. (g)(1)(A)(i), (iii) & (g)(2).) Any share of a recovery that is not allocated to the interested person or to reimburse attorney's fees or costs is to "be paid to the General Fund of the state" and, where a district attorney prosecuted the action, to both the General Fund and the "treasurer of the appropriate county." (*Id.*, subd. (g)(1)(A)(iv) & (g)(3).)

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Lawsuit Is Filed in July 2012 and Remains Under Seal Until March 2015**

Sills filed her complaint against defendants on July 13,

10

2012, in Sacramento County Superior Court.[6]  The complaint asserts five causes of action under the IFPA[7] and three causes of action under the CFCA.[8]

---

[6] Defendants filed an unopposed motion requesting that we take judicial notice of nine documents filed while the case was pending in the Sacramento County Superior Court.  We grant the request but note that six of those documents are already in the record.  "Pursuant to Evidence Code section 452, subdivision (d), we take judicial notice of these documents as '[r]ecords of . . . any court of this state.'  (Evid. Code, § 452, subd. (d)(1).)  However, we do not take judicial notice of the truth of any factual assertions appearing in the documents."  (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 483.)

[7] These five causes of action are for (1) employing runners, cappers and steerers (Ins. Code, § 1871.7, subd. (a)); (2) presenting or causing to be presented false or fraudulent claims for the payment of an injury under a contract of insurance (*id.*, subd. (b)); (3) knowingly preparing or making writings in support of a false or fraudulent claim (*ibid.*); (4) knowingly making or causing to be made false or fraudulent claims for payment of a health care benefit (*ibid.*); and (5) soliciting, accepting, and referring business to or from an individual or entity that intends to violate section 550 of the Penal Code or section 1871.4 of the Insurance Code (Ins. Code, § 1871.7, subd. (b)).  For the second through fifth of these causes of action, the complaint refers to Insurance Code section 1871.1, subdivision (b).  It is evident this is a typographical mistake.  The relevant section is 1871.7, subdivision (b).

[8] These three causes of action are for (1) presentation of false claims to Medi-Cal (Gov. Code, § 12651, subd. (a)(1)); (2) making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim to Medi-Cal (*id.*,

11

In accordance with the requirements of the CFCA and IFPA, Sills filed the complaint under seal and in camera, and served it only on the Attorney General, the Commissioner, and the Sacramento County District Attorney. At that point, under both the CFCA and IFPA, the seal was to remain in place for 60 days, until September 11, 2012. (Gov. Code, § 12652, subd. (c)(2), (5)-(8); Ins. Code, § 1871.7, subd. (e)(2).)

Although the relevant documents are not in the record, the parties agree that the court extended the seal until March 15, 2013, pursuant to a stipulation between Sills and the Commissioner, and that on March 11, 2013, the Commissioner filed an ex parte application to have the seal further extended until June 30, 2013, which the court granted.[9]

On or about June 5, 2013, the Commissioner filed a motion to have the seal extended through December 30, 2013. The motion indicated that detectives from the Fraud Division of the Department of Insurance were working alongside other law enforcement agencies to investigate Sills's allegations, and if the court was to unseal the complaint the defendants would be able to "deduce" the existence of the criminal investigation, which in

---

subd. (a)(2)); and (3) conspiracy to commit false claims to Medi-Cal (*id.*, subd. (a)(3)).

[9] Sills's counsel described this sequence of events in a declaration filed in opposition to a motion, discussed below, which the Commissioner later filed to further extend the seal. Sills's counsel stated in the declaration that Sills had agreed to a second extension of the seal until May 2013 on the condition there would be no further extensions, but the Commissioner rejected this condition and thus filed the ex parte application.

12

turn would "adversely affect[ ]" the investigation.[10]  The motion explained, with more specificity, that if the defendants became aware of the investigation, they might destroy or conceal documents and other evidence.  The motion was supported by a declaration from the deputy commissioner of investigations at the Department of Insurance, but this declaration was not served on Sills because it contained "highly confidential information regarding the criminal investigation."[11]  Sills opposed this motion.  The trial court extended the stay over her opposition until December 30, 2013, as requested by the Commissioner.

Sills later signed a stipulation with the Commissioner, the Attorney General and the Sacramento County District Attorney to extend the seal until May 31, 2014; the stipulation stated that the requested extension "is required in order to permit the California Department of Insurance to complete a criminal investigation of the allegations of the [c]omplaint" and that "[m]aking public the existence of this lawsuit and the allegation

---

[10] Defendants suggest it was somehow improper for the Commissioner to conduct this criminal investigation without alerting them of its existence.  They posit that Sills should have served them with the complaint, followed by the Commissioner seeking a stay under Insurance Code section 1871.7, subdivision (f)(4).  We disagree.  Such a sequence of events is contrary to the provisions of the IFPA set forth above, as the Commissioner's filings made clear the criminal investigation was related to the allegations of Sills's complaint.  The relevant government authorities were entitled to consider whether to pursue those allegations criminally, civilly, or not at all in connection with coming to judgment on the intervention decision during the sealing period.

[11] This declaration is likewise not in the appellate record.

13

[*sic*] of the [c]omplaint is likely to give the [d]efendants an opportunity to take actions that will impede the criminal investigation." The stipulation further stated, "[t]he law enforcement agencies involved in the investigation have already expended thousands of hours on the case. The Insurance Commissioner's investigation of the allegations of the [c]omplaint requires further time to obtain evidence. The facts are complex and involve a large number of claims." The court found good cause and approved the stipulation on December 16, 2013, extending the seal period to May 31, 2014.

Sills later signed one more, similarly-worded stipulation with the government agencies to extend the seal period to January 1, 2015; the stipulation was filed along with a memorandum of points and authorities from the Commissioner, which stated that the Department of Insurance had not yet completed its investigation and that unsealing the case would "impede[ ]" the investigation because it would alert the defendants that they were being investigated. The court found good cause and approved the stipulation on June 4, 2014, extending the seal to January 1, 2015.

On March 2, 2015, the court was informed through a stipulation that the "State of California" had decided not to intervene in the CFCA causes of action. The stipulation was silent as to the IFPA claims, but was signed by the Commissioner and the Sacramento County District Attorney's Office, and provided that the entire complaint would be unsealed. In connection with being informed of the intervention decision, the court approved a stipulated order unsealing the complaint and

14

"all other matters occurring in this action after the date of this [o]rder."[12]

## B. Proceedings in the Superior Court After the Seal Is Lifted

Following unsealing, Sills began prosecuting the action. On November 5, 2015, the case was transferred to Los Angeles County Superior Court based on Sills's motion.

On April 7, 2016, at the initial status conference in Los Angeles County Superior Court, the court stayed the entire action pursuant to Insurance Code section 1871.7, subdivision (f)(4), because a criminal case was proceeding in federal court against Bahar Gharib-Danesh and other defendants named in the qui tam complaint. At the time the stay was imposed, none of the defendants named in the qui tam complaint had filed an answer or other responsive pleading.

The case remained completely stayed for 712 days until March 20, 2018, when the trial court lifted the stay as to written discovery only.

On February 21, 2019, the court again stayed the entire action after criminal charges were filed against Bahar Gharib-Danesh in Orange County Superior Court. Although those criminal proceedings did not involve other defendants named in the qui tam action, the court imposed the stay as "to all parties

---

[12] There are two orders approving the same stipulation. One order was signed by Hon. Robert C. Hight on March 2, 2015, and the other was signed by Hon. David I. Brown on March 6, 2015. The action was apparently in the process of being transferred from Judge Brown to Judge Hight at this time and this likely explains why there were two orders. We conclude that the case was unsealed as a result of the first order.

15

and discovery." The court extended the stay on March 27, 2019, and it remained in place until October 15, 2019; the stay was in place for a total of 236 days.

On October 15, 2019, the court set a trial date of November 30, 2020, on Sills's causes of action.

The first answer was filed on October 31, 2019.

Following the outbreak of COVID-19 in March 2020, the Judicial Council of California adopted an emergency rule that extended the deadline to bring a civil action to trial under section 583.310. Specifically, emergency rule 10(a), effective April 6, 2020, provides that "Notwithstanding any other law, including . . . section 583.310, for all civil actions filed on or before April 6, 2020, the time in which to bring the action to trial is extended by six months for a total time of five years and six months." (Cal. Rules of Court, appen. I, emergency rule 10(a); see *Ables v. A. Ghazale Brothers, Inc.* (2022) 74 Cal.App.5th 823, 825 [emergency rule 10(a) extended five-year rule to five years and six months for cases filed on or before April 6, 2020].)

On September 8, 2020, in response to an order to show cause issued by the trial court, Sills posited her time to bring the matter to trial would expire on April 12, 2023. Sills attached a communication received from counsel for defendants Nira Hariri and Encino Care Pharmacy, Inc. agreeing to her proposed date of April 12, 2023. Also on September 8, 2019, defendants Charles Michael Boyer, Anthony Danesh, Tushar Ramnik Doshi, Na Young Eoh, Arman Gharib, Mohammed Gharib, Lana Elizabeth Montes, Joanna Munguia, Pain Free Management Company, LLC and United Health Services filed a response to the order to show cause which disagreed with Sills and stated the case was "well beyond" the five-year mark, although they did not specify

16

their contended expiration date. Defendants Bahar Gharib-Danesh, Pain Relief Health Center LLC, Pain Free Diagnostic, Bahar Gharib-Danesh Chiropractic, Inc., John T. Terrence and Mindwaves Psychological Services, Inc. joined in this response.

On September 9, 2020, the court continued the trial date to February 8, 2021, on its own motion.

On December 24, 2020, defendants Bahar Gharib-Danesh, Pain Relief Health Center LLC, Pain Free Diagnostic, and Bahar Gharib-Danesh Chiropractic, Inc. filed an ex parte application to continue the trial and all related dates due to their counsel's health condition. On December 28, the trial court granted the application, moving the trial date to August 2, 2021.

## C.     The Motion to Dismiss and Pertinent Provisions of the Code of Civil Procedure

Also on December 28, 2020, certain defendants[13] filed a motion to dismiss the entire action for Sills's failure to bring the matter to trial within five years, as required by section 583.310.

Before describing this motion or the trial court proceedings related to it, we pause to discuss provisions of the Code of Civil Procedure pertinent to the five-year rule's application to this matter. As noted above, section 583.310 requires that "[a]n action shall be brought to trial within five years after the action is commenced against the defendant." The five-year period begins to run when the initial complaint is filed in the action.

---

[13] The motion was filed by defendants Montes, United Health Services, Boyer, Eoh, Pain Free Management Co., Inc., Doshi, Anthony Danesh and Munguia. Respondents Terrence, Mindwaves Psychological Services, Inc., Zarrini, Hariri, and Encino Care Pharmacy, Inc. joined in the motion.

17

(*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 723 (*Bruns*).)  Cases not brought to trial within the five-year time limit are subject to dismissal; any such dismissal first requires a noticed motion either by a defendant or the court on its own initiative.  (§ 583.360, subd. (a).)

The five-year rule is "mandatory" and is "not subject to extension, excuse, or exception except as expressly provided by statute."  (§ 583.360, subd. (b).)  As pertinent here, section 583.340 provides that certain periods of time "shall be excluded" from the five-year period, in effect tolling the running of the five-year period, including that "[i]n computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which . . . [p]rosecution or trial of the action was stayed or enjoined."  (§ 583.340, subd. (b).)

In their motion to dismiss, defendants argued the clock for the five-year rule started ticking when the complaint was first filed.  They acknowledged the two court ordered stays related to criminal prosecutions of certain defendants tolled the five-year statute, and that Judicial Council emergency rule 10(a) related to the COVID-19 pandemic provided Sills an extra six months on top of the five years to bring the matter to trial.  Defendants argued no other tolling or extension applied, such that the deadline to bring the action to trial expired on August 20, 2020.

Sills opposed the motion.  She agreed the periods identified by defendants related to the criminal case stays did not count towards the five-year time limit, and Judicial Council emergency rule 10(a) afforded her an additional six months.  She argued, among other things, that pursuant to section 583.340(b) the period the case was under seal did not count toward the five-year statute because the action was stayed during that time.  Sills

18

accordingly calculated that the five years under section 583.310 expired on April 12, 2023.

After requesting supplemental briefing, and hearing argument, the court held "that the time [the complaint was] under seal does not stay the matter nor provide any other reason to extend the [five-]year statute" and ordered the case dismissed because including the sealing period in the computation meant more than five years and six months had elapsed since the filing of the complaint.

The court entered a judgment of dismissal on March 8, 2021. Sills timely appealed on April 19, 2021.

## DISCUSSION

On appeal, Sills argues the trial court should have excluded the period during which the case was under seal from the five-year period under section 583.340(b).[14] She contends that by requiring the action be filed and kept under seal until the relevant government agencies indicate whether they will intervene, the CFCA and IFPA impose a stay on the action within the meaning of section 583.340(b). Both the Attorney General and the Commissioner, in their respective amicus briefs, advocate a similar view.

---

[14] Sills and defendants also have briefed whether tolling is appropriate under section 583.340, subdivision (c), which excludes any time during which "[b]ringing the action to trial, for any other reason, was impossible, impracticable, or futile," and whether defendants are estopped from seeking dismissal based on their conduct before the trial court (including discovery violations that led to motions to compel). Because we find section 583.340(b) dispositive, we do not address those arguments.

Defendants counter that the five-year deadline started to run when the matter was filed, that "[t]here is no exclusion for the mere sealing of a complaint in [section] 583.340," and that Sills could have asked the trial court to issue a stay during the seal period, but no such stay was ever requested or granted.

## A.    Standard of Review

We review the trial court's construction of the CFCA, the IFPA, and the applicable provisions of the Code of Civil Procedure de novo because it involves statutory interpretation. (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1092 [issue whether a trial court order "stayed" prosecution of an action under § 583.340(b) is reviewed de novo "because it does not hinge on the resolution of factual questions concerning credibility of extrinsic evidence"] (*Gaines*); see also *Bruns*, *supra*, 51 Cal.4th at p. 724.)

## B.    The 962 Days the Action Was Kept Under Seal Should Have Been Excluded from the Five-year Period Pursuant to Section 583.340(b)

Sills filed her complaint on July 13, 2012, and the seal was lifted on March 2, 2015; we calculate this period (including the day the complaint was filed but not the day the seal was lifted) to total 962 days.  The five-year period set forth in section 583.310 began to run when Sills filed her complaint.  (*Bruns*, *supra*, 51 Cal.4th at p. 723.)  As explained below, we conclude that prosecution of the action was "stayed," as this term is used in section 583.340(b), during those 962 days.  Under both the CFCA and the IFPA, Sills could not take litigative action of any kind until the government made its intervention decision at the expiration of the sealing period.  During this period, Sills was not allowed to serve the summons and complaint on any defendant or

20

take any other steps to use the tools and procedures available to a civil litigant.

Our Supreme Court has construed section 583.340(b) twice in recent years, in *Bruns* and *Gaines*.  In *Bruns*, the issue before the court was whether a partial stay, such as a stay on discovery, would trigger section 583.340(b)'s tolling provision.  (*Bruns*, *supra*, 51 Cal.4th at pp. 721-722, 730.)  The court noted that "[t]he term 'stay,' by itself, could refer to either a partial or a complete cessation of proceedings."  (*Id.* at p. 724.)  It also noted that "[o]nly when the 'prosecution' or 'the trial' of the 'action' is stayed does running of the five-year period halt under [section] 583.340(b)."  (*Id.* at p. 725.)  The court then reviewed various definitions of "prosecution" which collectively indicated that the term referred to carrying out or pursuing all proceedings or steps in a lawsuit until its final determination.  (*Ibid.*)

Applying this analysis to the question before it, the court held that section 583.340(b) "contemplates a bright-line, nondiscretionary rule that excludes from the time in which a plaintiff must bring a case to trial only that time during which *all* the proceedings in an action are stayed."  (*Bruns*, *supra*, 51 Cal.4th at p. 726, italics added.)  Thus, partial stays imposed by the trial court, which halted "specific proceedings, such as a stay of discovery," are not to be excluded from the five-year period under section 583.340(b).  (*Id.* at pp. 721-722, 730.)

In *Gaines*, *supra*, 62 Cal.4th 1081, the court considered whether section 583.340(b) was triggered by a trial court order which struck a scheduled trial date and " 'stayed [the case] for a period of 120 days except that [the] parties are to respond to all previously served and outstanding written discovery' and 'are directed to participate in good faith in a mediation of all claims in

21

this case within the next 90 days.' " (*Id.* at p. 1091.)  The court first analyzed whether the order effected a stay of the trial, explaining that "[t]o decide whether section 583.340(b) applies, we must distinguish between a stay of the trial and a continuance.  Under section 583.340(b), a stay of the trial halts the running of the five-year period.  [Citation.]  By contrast, a continuance generally does not." (*Id.* at pp. 1091-1092.)  The court held that "[t]he label the trial court uses is not dispositive of the inquiry.  [Citation.]  What matters is whether the order is functionally in the nature of a stay, which implicates the legislative purposes behind tolling the five-year period, or whether it is functionally in the nature of a continuance, which does not." (*Id.* at p. 1092.)

The court concluded that "[t]he long-standing judicial understanding of the term 'stay' in the context of the five-year statute is that it refers to those postponements that freeze a proceeding for an indefinite period, until the occurrence of an event that is usually extrinsic to the litigation and beyond the plaintiff's control." (*Gaines*, *supra*, 62 Cal.4th at p. 1092.)  Based on this principle, the court held the stipulated trial postponement at issue was "agreed to by the parties and not occasioned by an extrinsic proceeding, court order, or law barring action" and therefore did "not qualify for automatic tolling." (*Id.* at p. 1094.)

The court then considered whether other aspects of the trial court's order distinct from the trial postponement "stayed" prosecution of the action as contemplated by section 583.340(b).  It again noted that "the label used in the trial court's order is not dispositive.  [Citation.]" (*Gaines*, *supra*, 62 Cal.4th at p. 1094.)  It stated, " 'The term "prosecution" is sufficiently comprehensive to include every step in an action from its commencement to its

22

final determination.' " (*Id*. at p. 1094, quoting *Ray Wong v. Earle C. Anthony, Inc.* (1926) 199 Cal. 15, 18.) The court concluded that both discovery and mediation constituted a "step" in the action, and thus the trial court's order effected only a partial stay of the action which, under *Bruns*, did not trigger tolling under section 583.340(b). (*Gaines, supra*, at pp. 1094-1095.)

Applying these principles to the case before us, we conclude that prosecution of the qui tam action was "stayed" as that term is used in section 583.340(b) because the CFCA and IFPA barred Sills from making use of *any* of the procedures and tools typically available to a civil litigant while the case was under seal for purposes of the government's intervention decision. (*Gaines, supra*, 62 Cal.4th at p. 1094 [laws barring any prosecutive action qualify for tolling under § 583.340(b)].) The prohibitions in the CFCA and IFPA on any prosecutive action during the sealing period were automatic, non-discretionary, and unconditional. Under both the CFCA and the IFPA, the complaint could not be served on any defendant during the seal period. (Gov. Code, § 12652, subd. (c)(2); Ins. Code, § 1871.7, subd. (e)(2).) The matter was required to be maintained under seal and in camera, meaning Sills could not conduct any discovery.[15] During the

---

[15] Indeed, the sealing requirement mandates the qui tam plaintiff not take independent action to alert a defendant about the under-seal complaint. Cases interpreting the federal false claims statute (FCA; 31 U.S.C. § 3729 et seq.), upon which the CFCA was modeled, have recognized that one purpose of the seal is to keep the fact that a qui tam plaintiff has filed an action a secret from the defendant(s). (See *U.S. ex rel. Lujan v. Hughes Aircraft Co.* (9th Cir. 1995) 67 F.3d 242, 244 [concluding qui tam plaintiff violated the seal provisions of the FCA by making

23

court-supervised sealing period, the government investigated Sills's allegations; that investigation (similar to the type of pre-filing investigation the government undertakes in a non-qui tam case) is distinct from the prosecution of the civil action, which did not commence until after the appropriate prosecuting authority decided whether to intervene. Furthermore, because the defendants could not be served and thus did not file pleadings in response to the complaint, there could be no resolution of legal challenges to the complaint, such as demurrers. Any litigation activity that typically occurs after discovery and challenges to the pleadings, such as a motion for summary judgment and trial, also could not occur while the action was under seal. Defendants do not identify any step in the litigation that Sills could have taken while the case was under seal for purposes of the government's intervention decision, nor can we.[16]

statements about the action to a newspaper]; *Pilon v. Martin Marietta Corp.* (2d Cir. 1995) 60 F.3d 995, 998 [legislative history of FCA reveals that "[t]he government was concerned . . . that qui tam claims might overlap with or tip a defendant off to pending criminal investigations" (italics omitted)].)

[16] Defendants suggest in passing that Sills could have potentially shortened the length of the seal period by opposing all requested extensions by the government instead of stipulating to some of them. This is entirely speculative, as when Sills did oppose or not accede in such requests, the government sought and obtained the requested extension anyway. In any event, the qui tam plaintiff's role under the CFCA and IFPA is to provide the complaint and the information on which it is based to the relevant government authorities and then wait for the government to make its intervention decision. Sills did not participate in that decision, and she lacked information such as

Defendants make two primary arguments that section 583.340(b) does not apply to the pre-intervention decision sealing period. We find neither of them persuasive. Defendants first claim "[t]here is no exclusion for the mere sealing of a complaint." But what is at issue here is not the mere sealing of a complaint without more, because the sealing provisions of the CFCA and the IFPA also prevent any litigation activity by the qui tam plaintiff until the government makes its intervention decision and the complaint is then unsealed. Defendants provide no authority suggesting that a seal which results in such a complete stay of the action does not trigger the tolling period.[17]

_____

what investigation and analysis remained for the government to perform before the intervention decision was ripe. Until that decision was made, the law barred her from prosecuting any aspect of the case. Accordingly, whether Sills opposed, agreed, or remained silent as to government requests for extension of the sealing period under Government Code section 12652, subdivision (c)(5) or Insurance Code section 1871.7, subdivision (e)(3) is immaterial to analyzing whether the case was stayed for purposes of section 583.340(b). Defendants themselves recognize this, saying "[e]ven if every extension of the seal was ordered over [Sills]'s objection, which is not the case, it would nevertheless be of no consequence" to computing the five-year period.

[17] We recognize one court, in the context of applying provisions of section 583.240 that toll the three-year period during which a complaint must be served after filing, suggested the seal at issue in that case was not equivalent to a stay. (*State ex rel. Edelweiss Fund, LLC v. JP Morgan Chase & Co.* (2020) 58 Cal.App.5th 1113, 1120, fn. 2.) *Edelweiss*, however, involved a very different "seal" than the one before us. The parties there agreed, and the court found, that the sealing period from the

Second, defendants argue Sills could have moved for a stay but did not. But section 583.340(b) does not require that prosecution of the action be "stayed" *by a court order*. As *Gaines* recognizes, a stay of prosecution for purposes of section 583.340(b) can be "occasioned by . . . [a] law barring action." (*Gaines*, *supra*, 62 Cal.4th at p. 1094.) A stay, for example, can result from the operation of a statute. (See, e.g., 11 U.S.C. § 362(a) [automatic stay of litigation against debtor upon filing of bankruptcy petition].) As explained above, the CFCA and IFPA operate to stay any prosecution of the action by the qui tam plaintiff during the sealing period for the government's intervention decision.[18] Given that Sills was statutorily barred

filing of the qui tam complaint until the Attorney General's intervention decision tolled the time limits of the statute at issue because service was impossible. (*Id*. at pp. 1121, 1123.) The court's statement about sealing and stays, therefore, was not directed to the sealing period we address. Instead, after the Attorney General filed its notice of non-intervention, the qui tam plaintiff in *Edelweiss* sought and received additional extensions to keep the complaint under seal despite being able at that point to prosecute the action. (*Id*. at pp. 1118-1119.) The qui tam plaintiff acknowledged, and the court understandably found, that this *post*-intervention decision sealing period did not involve a stay and was not equivalent to a stay. (*Id*. at p. 1120, fn. 2.)

[18] Defendants relatedly point out that under Insurance Code section 1871.7, subdivision (f)(4), an IFPA action "shall be stayed" if that action "and a criminal action are pending against a defendant for substantially the same conduct." They argue that this shows the seal required under the IFPA is not a "stay," because the Legislature did not use the word "stay" to describe it, and Sills therefore should have separately moved for a stay

26

from taking any litigative action to prosecute the case, it would have been an idle act to seek a court order imposing the very same stay the CFCA and IFPA already required at that stage of the proceedings. (Civ. Code, § 3532 ["The law neither does nor requires idle acts"].)

The Legislature has directed that the CFCA "be liberally construed and applied to promote the public interest." (Gov. Code, § 12655, subd. (c).) As the Attorney General points out, adopting defendants' position that a CFCA action is not stayed while the action is sealed is contrary to this directive. It might force government agencies to choose between an adequate investigation before intervening and having enough time to properly litigate a case to trial once the case is unsealed. It would also likely lessen the appeal to a qui tam plaintiff in filing a CFCA action, as she would face the possibility of being left in charge of litigating the action without having sufficient time to do so properly once the government investigation concludes and the matter is unsealed. It would further have the perverse result of the *largest* and most complicated allegations of fraud requiring the greatest amount of investigation being afforded the *least* amount of time to get to trial once the intervention decision is made. These same concerns apply with equal force to cases brought by interested persons under the IFPA.

---

during the sealing period. As discussed above, resolution of whether an action was "stayed" does not turn on the label applied. (*Gaines*, *supra*, 62 Cal.4th at pp. 1092, 1094.) Thus, whether the IFPA uses the word "stay" elsewhere does not aid our analysis of whether the statute permits any prosecution by the qui tam plaintiff while the case is under seal for purposes of the government's intervention decision.

27

## C. The Five-year Period Had Not Expired At the Time the Court Dismissed the Action

There is no dispute the trial court stayed the entire action twice due to related criminal matters involving some of the defendants in the qui tam action and that these two stay periods are properly excluded from computation of the five-year period. The first such stay lasted for 712 days from April 7, 2016, until March 20, 2018 (the stay continued after that time but only as to discovery, and thus was only a partial stay that we do not count for five-year rule purposes). The second such stay lasted 236 days from February 19, 2019, to October 15, 2019.

A five-year period totals 1,825 days.[19] Adding to that period the 962 days during which the action was under seal, the 712 days of the first stay and the 236 days of the second stay, totals 3,735 days. The date 3,735 days from the date Sills filed her complaint (July 13, 2012) is October 3, 2022. Adding six months due to the COVID-19 emergency rule extends the period to April 3, 2023. Therefore, the trial court erred in prematurely dismissing Sills's action on February 24, 2021.

---

[19] We recognize that one leap year occurred during the five years after July 2012, but under the Government Code the extra day in a leap year is not to be included when computing in years. (Gov. Code, § 6803 [defining " '[y]ear' " as "a period of 365 days" and stating "[t]he added day of a leap year, and the day immediately preceding, if they occur in any such period, shall be reckoned together as one day"].)

## DISPOSITION

We reverse the trial court's judgment of dismissal, order the action reinstated, and remand for further proceedings.  Sills is awarded her costs on appeal.

CERTIFIED FOR PUBLICATION


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



CHANEY, J.

29