Filed 5/2/23  Gaines v. Lehman Brothers Holdings CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| MILTON HOWARD GAINES, | B314160 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BC361768 |
| v. | |
| LEHMAN BROTHERS HOLDINGS, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John P. Doyle, Judge.  Judgment modified and, as modified, affirmed.

Garcia Legal, Steven Ray Garcia and Alexander Levy for Defendant and Appellant.

Ivie McNeill Wyatt Purcell & Diggs and W. Keith Wyatt for Plaintiff and Respondent.

_____

# SUMMARY

This is an appeal from the fourth amended judgment in a case that began in 2006. In an appeal from the original judgment, we found the trial court properly quieted title to a parcel of real property in plaintiff, but abused its discretion in failing to require plaintiff, as a precondition, to repay to defendant over half a million dollars in benefits plaintiff's parents had received in a previous transaction involving the property.

We ordered the trial court to exercise its equitable discretion to set the amount of the repayment between a minimum of $567,955.96 and $854,647.93, the latter being the full amount of the benefits plaintiff's parents received. We left to the trial court defendant's entitlement to interest and all other equitable issues regarding the structure for plaintiff's repayment. We further ordered the judgment modified to provide that the judgment for plaintiff be vacated and judgment be entered for defendant if plaintiff failed to meet the repayment condition.

The trial court, in a second amended judgment, ordered repayment of the minimum amount of $567,955.96 within six months (by March 15, 2021), without interest. At plaintiff's request, the time for repayment was extended in a third amended judgment to May 26, 2021, again without interest. Finally, in the fourth amended judgment, the trial court extended the deadline for repayment indefinitely, until two months after the resolution of another quiet title action that had recently been filed by yet another claimant to the property.

Defendant argued in the trial court and argues here that it was inequitable for the trial court to delay payment as it did without requiring plaintiff to cure the current tax default on the

2

property, which puts the property at risk of a tax sale. Defendant also argued below, and here, that it was inequitable and an abuse of discretion for the trial court to order no interest on the judgment.

We conclude the trial court abused its discretion by extending the repayment deadline to an indefinite time likely to be measured in years, not weeks or months, without also requiring postjudgment interest and other conditions that would support allowing an otherwise excessive and unjust time for repayment. Our order on remand from the appeal of the original judgment necessarily implied a reasonable time for repayment, and the time that has passed exceeds anything reasonable.

We order the judgment modified to require plaintiff to pay the delinquent taxes in full within 60 days of the issuance of our remittitur, and to require plaintiff to remain current in paying future property taxes when due. If plaintiff does so, his obligation to pay defendant the minimum amount ordered by the trial court ($567,955.96), plus postjudgment interest calculated from an accrual date of September 16, 2020, will become due as ordered in the fourth amended judgment. If plaintiff does not pay the delinquent taxes by the deadline ordered here, then plaintiff is obligated to pay the $567,955.96 plus postjudgment interest to defendant within a reasonable time to be determined by the trial court in a manner consistent with the views expressed in this opinion. If payment of the $567,955.96 plus postjudgment interest to defendant is not timely made, judgment for plaintiff is to be vacated and judgment is to be entered for defendant.

3

## FACTS

The underlying facts have been recited in previous opinions in this case and in related probate proceedings, and we repeat a brief version here. We refer to the civil department of the court that has presided over most of the proceedings since 2006 (including the judgment from which this appeal was taken) as "the trial court" or "the court." We refer to the probate department of the court that has presided over probate proceedings related to the property since 2010 as "the probate court."

In 2006, homeowners Fannie Marie and Milton Gaines fell behind on mortgage payments on their duplex (the Longwood property) and went into foreclosure. They sought help from Countrywide Home Loans, their lender. A Countrywide employee lied to them that Countrywide could not refinance their loan, and then referred them to her fiancé Joshua Tornberg for help. Tornberg and others deceived Fannie and Milton into transferring title to their property to Tornberg in a leaseback deal Tornberg never intended to honor. Tornberg took out a loan against the property that was eventually acquired, four years later in 2010, by Lehman Brothers Holdings, Inc. (Lehman or defendant).

Milton died, and in November 2006 Fannie filed a lawsuit against those involved in the transaction, alleging causes of action for fraud, cancellation of the deed to Tornberg, quiet title, and others. Counsel recorded notices of lis pendens as to the Longwood property in 2006 and 2007. After years of procedural wrangling, during which Fannie died and her son Milton Howard Gaines (Gaines or plaintiff) stepped in as plaintiff, in 2012 Tornberg and other defendants were dismissed for Gaines's

4

failure to bring the case to trial within five years. That ruling was upheld by the Supreme Court in 2016. (*Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081.) Because Lehman was added to the suit after it acquired the Tornberg loan in 2010, later than the dismissed defendants, Lehman remained the sole defendant.

After a bench trial in June 2017, the trial court entered judgment on July 9, 2018, quieting title to the Longwood property in Gaines's favor, cancelling the warranty deed from Fannie and Milton to Tornberg, and cancelling Lehman's deed of trust against the property.

Lehman appealed, contending (among other things) the trial court improperly adjudicated Tornberg's title to the property even though he was no longer a defendant. This court found no error on that ground. We explained that, as a nonparty, "Tornberg could not be *bound* by the judgment as to the validity of his title, but the court could still make findings as to Tornberg's title in order to adjudicate the validity of Lehman's title." (*Gaines v. Lehman Bros. Holdings, Inc.* (Jan. 29, 2020, B292497) 2020 Cal.App.Unpub.Lexis 660, p. *10 (*Gaines I*).) We observed that, as the trial court correctly understood, Gaines might be exposed to a future quiet title action by Tornberg because Tornberg was not bound by the judgment quieting title in Gaines's favor. (*Id.* at p. *13.) We also concluded the court sitting in equity should have required Gaines to pay back benefits Fannie and Milton received from the Tornberg transaction. (*Id.* at p. *27.)

Consequently, in *Gaines I* we conditionally affirmed the judgment quieting title for Gaines and canceling the warranty deed and Lehman's deed of trust, but modified it to add this

5

condition: Gaines must repay the benefits received by Fannie and Milton between a minimum of $567,955.96, representing the amount used to pay off the delinquent Countrywide loan, and $854,647.93, the full amount of the benefits Fannie and Milton received in the Tornberg transaction, with the amount to be determined by the trial court. (The full amount of benefits Gaines received included $4,221.65 in real estate taxes; $279,930.32 paid to Gaines's parents in cash; and $2,500 in funds advanced to Gaines's parents during escrow.)[1] Our disposition also stated that "Lehman's entitlement to interest and all other equitable issues regarding the structure for Gaines's repayment are left to the trial court on remand." We further modified the judgment to provide if Gaines failed to satisfy the condition of paying the amount ordered by the trial court, the trial court must enter judgment for Lehman. (*Gaines I, supra,* 2020 Cal.App.Unpub.Lexis 660, p. *31.)

In briefing to the trial court on remand in March 2020, Lehman sought repayment by Gaines of $1,736,954.79, consisting of the maximum amount specified in our opinion, plus prejudgment interest of more than $882,000. Lehman calculated the prejudgment interest on the payoff of the Countrywide note at the variable rate on that loan, proffering expert evidence; and calculated the prejudgment interest on the other benefits Gaines received at the legal rate. Lehman suggested Gaines be given 60 days to pay after entry of judgment.

Gaines sought repayment of the $567,955.96 within two years, with no interest during the two-year period.

---

[1] There appears to be a $40 discrepancy in the addition of these amounts.

At the hearing on July 6, 2020, the parties discussed the prejudgment interest question (among other points).  Counsel for Gaines repeatedly told the court that the Court of Appeal "gave the court discretion to determine whether interest should be paid."  Counsel for Lehman said:  "The interest, again, I agree with [counsel for Gaines].  The Court of Appeal said it's up to the court to decide whether interest is appropriately awarded . . . ."  Later, the court stated:  "Now, prejudgment interest does not necessarily have to be awarded; right?  It's—that's—all or none is one way to go, isn't it?  Right, Mr. Garcia [counsel for Lehman]?"  The record shows counsel for Gaines responded, "That's correct, Your Honor," and shows no response from Mr. Garcia.  Still later, Mr. Garcia brought up the subject of interest again, saying that "interest is not an either-or.  It's not either you award all the interest, or you award none of the interest because there are certain components of the payments that may be more appropriate in the court's discretion to consider awarding interest, such as the payoff of the Countrywide obligation."  And:  "All I'm suggesting to the court is it's not an absolute.  It's an either-or with respect to each of the components that make up those numbers."

On August 6, 2020, the trial court filed a 12-page statement of decision, concluding Gaines should pay the minimum amount ($567,955.96) and declining to award prejudgment interest on that amount or on any other component of the benefits Gaines received.  As to the minimum amount, the court stated:

"[T]he Court respectfully declines to make an award here greater than the $567,955.96 amount of the subject delinquent loan pay-off.  Again, this determination comprises an exercise of the Court's discretion on this particular remand under the

7

circumstances, in the interests of justice, against a backdrop and in a context in which Lehman acquired a 'loan package' that simply could not have been more riddled with fraud and self-dealing. As the Court of Appeal expressly found . . . , Lehman cannot properly be permitted now to somehow deflect the financial consequences of the underlying misconduct based on an argument that such wrongdoing was perpetuated by the employees or agents of its various what might be characterized as predecessors-in-interest, Lehman having had every opportunity to investigate the underpinnings of the Gaines' lawsuit that was filed in November 2006, more than four years prior to Lehman's acquisition of its security interest in the Gaines' Longwood property in December 2010."[2]

---

[2] The trial court's reference to the Court of Appeal refers to our rejection in *Gaines I* of Lehman's contention that Gaines should be estopped from disputing the validity of Lehman's deed of trust. Among other things, *Gaines I* stated: "[W]e cannot disturb the trial court's exercise of discretion in declining to apply [estoppel] against Gaines under these facts. The trial court made clear it viewed the egregiousness of the fraud committed against Fannie and Milton by Lehman's predecessor-in-interest Tornberg as far outweighing any acts by them that might give rise to estoppel. Elsewhere the court rejected Lehman's bona fide encumbrancer argument, finding Lehman 'had actual or constructive notice and/or at least had been placed on inquiry notice of the deeply troubled Gaines-Tornberg sale transaction on which the security interest rested.' Indeed, the court noted Lehman obtained a security interest in December 2010, over four years after Fannie filed this lawsuit in November 2006. The court thus reasonably imputed Tornberg's fraudulent transaction to Lehman in refusing to apply estoppel to bar Gaines's claims." (*Gaines I, supra,* 2020 Cal.App.Unpub.Lexis 660, pp. *24–*25.)

8

As we discuss in more detail, *post,* the court used a similar analysis in deciding not to award prejudgment interest.

The court gave Gaines 180 days to pay. The court found that both Lehman's 60-day suggestion and Gaines's two-year request "are not reasonable under the circumstances, particularly given the long duration of this now almost fourteen year saga."

On September 16, 2020, the trial court entered the second amended judgment, consonant with its statement of decision, adding the condition that Gaines repay to Lehman $567,955.96 within 180 days from entry of judgment, failing which the court would enter judgment for Lehman. The judgment also stated that Lehman "is not entitled to recover interest of any kind regarding said amount."

In October 2020, Gaines, as administrator of Fannie Marie Gaines's estate, sought approval from the probate court to sell the Longwood property to EWA Holdings LLC for $1,070,000. (We granted Gaines's motion to augment the record in this case to include the transcripts of several hearings held in the probate court.) Gaines wanted to sell the Longwood property to generate the funds to make the $567,955.96 payment to Lehman required by the second amended judgment.

Lehman told the probate court that, because Tornberg had transferred the property to Longwood 18, LLC (Longwood 18) by a deed recorded June 20, 2017, Longwood 18, not Gaines, was the record owner of the property. (*Gaines v. Longwood 18, LLC (Estate of Gaines*) (Nov. 30, 2022, B311210) 2022 Cal.App.Unpub. Lexis 7268, p. *5.) Several probate hearings ensued. Longwood 18 attended a hearing in December 2020, at which both Lehman and Longwood 18 objected to Gaines's proposed sale. (*Ibid.*) After several hearings, the probate court overruled the objections

9

and confirmed the sale of the Longwood property for $1,070,000. (*Id.* at p. *6.) Longwood 18 appealed the probate court's order, and in November 2022 this court reversed the probate court's order, holding the probate court had no authority to order a sale of property to which the estate does not hold title. (*Id.* at p. *10.)

Meanwhile, by the time the probate court finally signed an order confirming the sale, it was March 2021, and Gaines's deadline for repayment under the second amended judgment was March 15, 2021. In the interim, Gaines asked the trial court to toll or extend the time for tendering payment to Lehman. Several hearings occurred in the trial court on this subject, on the status of the proposed sale, and of the probate court's approval of the sale.

In December 2020, the trial court was first apprised of Longwood 18's interest in the case. On December 17, 2020, counsel appeared on behalf of Longwood 18, and the court observed, "Longwood 18 LLC, this is the first I've heard about it." The court ordered the six-month period for Gaines's payment tolled from December 17, 2020, through January 22, 2021.

On March 19, 2021, counsel informed the trial court that Longwood 18 had filed a quiet title case.

On April 14, 2021, Gaines filed a motion to extend the time for repayment until the completion of the quiet title litigation filed by Longwood 18.

On April 21, 2021, the court entered a third amended judgment. This judgment extended the time for Gaines to make the repayment to May 26, 2021, "subject to further determination by the Court at a hearing now set for May 18, 2021."

On May 18, 2021, the court extended the payment deadline until two months after the resolution of the Longwood 18 quiet

10

title action. The trial court entered the fourth amended judgment, consonant with its order, on May 24, 2021. The judgment states that "[t]he Court, in equity, finds that the quiet title action is precluding the completion of the sale of the property which was approved and ordered on March 19, 2021 by the Probate Court . . . ." The judgment further states that during the pendency of the Longwood 18 quiet title action, the court would retain jurisdiction to make further orders regarding the deadline for Gaines's payment "as fairness and equity may dictate."

Lehman filed a timely notice of appeal.

## DISCUSSION

Lehman contends the judgment should be reversed, "and the trial court should be required to allow post judgment interest to be added to the judgment and to require that Gaines pay the tax delinquency to protect the property from a tax sale while the judgment remains outstanding." As we observed at the outset, and as we discuss in parts 2 and 4, *post*, we agree with this disposition. We disagree, however, with Lehman's further contentions that it is entitled to prejudgment interest on the repayment amount, and that the trial court should also have required Gaines to repay the maximum amount of the benefits Gaines's parents received rather than the minimum amount.

## 1. The Trial Court's Choice of the Minimum Repayment

Lehman contends it was "inequitable" for the court "not to require Gaines to disgorge" *all* the benefits received in the Tornberg transaction. Lehman says it "was a stranger to the wrongdoing that the trial court found infected" the Tornberg transaction, and Lehman's "only crime was buying the loan four years after the events that gave rise to the case." Lehman's

11

contention ignores both our decision in *Gaines I* and the facts found by the trial court at the 2017 trial.

Our opinion in *Gaines I* expressly stated that "requiring Gaines to repay the additional cash above the Countrywide loan payoff may not be equitable," and we left it to the trial court "to weigh the equities and set the amount of repayment . . . ." (*Gaines I, supra,* 2020 Cal.App.Unpub.Lexis 660, p. *30.) Lehman offers no basis for us now to conclude that the court abused its discretion in requiring repayment of the minimum rather than the maximum. Indeed, Lehman fails throughout to acknowledge that it bought the loan four years after Fannie Marie Gaines brought this lawsuit in November 2006, and that the trial court found Lehman " 'had actual or constructive notice and/or at least had been placed on inquiry notice of the deeply troubled Gaines-Tornberg sale transaction on which the security interest rested.' " (*Id.* at pp. *24–*25.) As this court stated in *Gaines I,* the trial court "thus reasonably imputed Tornberg's fraudulent transaction to Lehman in refusing to apply estoppel to bar Gaines's claims*."* (*Id.* at p. *25.)

The trial court fully explained its decision to require the minimum amount, as described in the Facts, *ante* at pages 7 through 8. The trial court complied with our instruction "to weigh the equities." We expressly granted the trial court discretion to award a minimum of $567,955.96, and Lehman has not persuaded us we should now disturb its exercise of discretion on this point.

## 2. Postjudgment Interest

We agree with Lehman that the trial court erred when it ordered Lehman was "not entitled to recover interest of any kind." Postjudgment interest is required. "[I]nterest commences

to accrue on a money judgment on the date of entry of the judgment." (Code Civ. Proc., § 685.020, subd. (a).)  Accordingly, interest began to accrue on September 16, 2020, when the trial court entered the second amended judgment requiring Gaines to pay Lehman $567,955.96.

Gaines protests, contending the trial court's order to pay $567,955.96 operates as an equitable lien instead of a money judgment.  That is not the law.

"A general doctrine of equity permits imposition of an equitable lien where the claimant's expenditure has benefited another's property under circumstances entitling the claimant to restitution."  (*Jones v. Sacramento Savings & Loan Assn.* (1967) 248 Cal.App.2d 522, 530.)  "A specific application of the doctrine occurs when a lender advances money which benefits the land of another in mistaken reliance upon an imperfect mortgage or lien upon that land."  (*Ibid.*; see *id.* at p. 531 ["The judgment imposing the lien will not be a money judgment, will simply establish a charge on property and will not bear interest in favor of the equitable lienholder."].)  Those are not the circumstances in this case.

Here, there is no judgment imposing a lien, and there is no charge on the property.  There is a judgment requiring Gaines to pay a specific amount of money, based on contract and originating from a specific debt, as a precondition to quieting title in favor of Gaines.  As we said in *Gaines I,* "[a] 'customary' judgment under the circumstances would quiet title in Gaines conditioned on his repayment of those benefits to Lehman, and if Gaines fails to satisfy that condition, enter judgment for Lehman."  (*Gaines I, supra,* 2020 Cal.App.Unpub.Lexis 660,

13

p. *30.) The repayment condition is a money judgment on which interest is required by statute.

Lehman argues that postjudgment interest should be awarded "retroactive to July 9, 2018," the date of the original judgment quieting title in Gaines and cancelling Lehman's deed of trust. Lehman is mistaken. Postjudgment interest accrues from September 16, 2020, the date of the second amended judgment requiring Gaines to pay $567,955.96 as a precondition of a quiet title judgment.

The applicable principles are stated in *Chodos v. Borman* (2015) 239 Cal.App.4th 707. " ' "When a judgment is modified upon appeal, whether upward or downward, the new sum draws interest from the date of the entry of the original order, not from the date of the new judgment. [Citations.] On the other hand, when a judgment is reversed on appeal the new award subsequently entered by the trial court can bear interest only from the date of entry of such new judgment." ' " (*Id.* at pp. 712–713.) "Whether an order by an appellate court is a modification or a reversal depends on the substance and effect of that order. [Citations.] An appellate court order is 'a reversal in the legal sense' when it reverses the trial court and remands an issue to the trial court for further hearing and factfinding necessary to the resolution of the issue forming a basis for appeal." (*Id.* at p. 713.)

Similarly, a judgment may be couched in terms of a reversal, but really be only a modification, as in *Snapp v. State Farm Fire & Casualty Co.* (1964) 60 Cal.2d 816, 818–820. In *Snapp*, the Supreme Court held an appellate order reversing a judgment for $8,168.25 with directions to enter judgment for $25,000 was, in legal and practical effect, a modification, because

14

"the appellate court on the first appeal decided that not $8,168.25 but $25,000 was due as a matter of law, and no further proceedings were required . . . ." (*Id.* at p. 821.)

Lehman contends we modified the original judgment, and therefore interest runs from the date of that judgment. We disagree. The substance and effect of our order was a reversal in the legal sense because the original judgment was not a money judgment, and further hearing was necessary to determine what the money judgment should be. The point is stated clearly in *Lucky United Properties Investment, Inc. v. Lee* (2013) 213 Cal.App.4th 635, 654 ("These cases may be understood to hold that interest accrues from the date that the trial court fixes the amount due or errs in fixing the amount due but that error is corrected on appeal without the need for further factfinding in the trial court. When, on the other hand, the amount due is not and cannot be fixed until after further factfinding on remand from appellate review, interest does not accrue until the final determination is made.").

## 3.     Prejudgment Interest

Lehman asked the trial court to award prejudgment interest running from the time of the Countrywide payoff by its predecessor in August 2006, and based on the variable interest rate charged in the Countrywide loan. Lehman contends the trial court abused its discretion in denying prejudgment interest because Lehman "is equitably subrogated to the position of Countrywide." Lehman claims it was "not involved in defrauding the Gaineses and so is not chargeable with culpable and inexcusable neglect."

Lehman does not explain how the principles of equitable subrogation apply to these circumstances, instead citing inapt

15

cases, none of which involves a transaction induced by fraud and a purported subrogee on actual, constructive or inquiry notice of the claims of fraud. Once again, Lehman simply ignores the trial court's rejection of Lehman's bona fide encumbrancer argument and its finding Lehman had actual, constructive or inquiry notice of the Gaines-Tornberg transaction on which Lehman's security interest rested.

In *Gaines I,* we left the question of interest to the trial court's discretion on remand. (*Gaines I, supra,* 2020 Cal.App.Unpub.Lexis 660, p. *31.) At the hearing on remand, both parties told the trial court that "it's up to the court to decide whether interest is appropriately awarded." And the trial court fully explained its decision not to award prejudgment interest.

The court stated: "[T]he Court finds that to award prejudgment interest under the circumstances here—apparently in the amount of several hundred thousand dollars—would work at cross-purposes with the remedial purposes that lie at the heart of the Court's determination of this fraudulent loan controversy. Again, the subject benefits were certainly provided to the Gaines, of course, but were provided at least in some measure as the product of the desperate situation in which the Gaines found themselves during the relevant period, which in turn was in some substantial measure the product of the flagrant transgressions of Tornberg and others, misconduct which was essentially part and parcel of the subject security interest that Lehman acquired improvidently. In this regard, the Court of Appeal opined that the trial court 'reasonably imputed Tornberg's fraudulent transaction to Lehman in refusing to apply estoppel to bar the Gaines's claims.' . . . Thus, the Court respectfully declines to make an award of prejudgment interest on the amount awarded

to Lehman pursuant to the Court of Appeal's remand with directions."

Lehman has failed to demonstrate an abuse of discretion by the court's decision not to award prejudgment interest.

## 4. Time for Repayment and Delinquent Taxes

As we have observed, our disposition in *Gaines I* implicitly required the trial court to set a *reasonable* time for Gaines's repayment. Indeed, at an April 15, 2021 status conference discussion on extending the deadline, the trial court observed that it could in theory order the deadline continued through the conclusion of the quiet title case, but "[f]rankly, that . . . doesn't sound right." We agree with that assessment, and we agree with Lehman it was an abuse of discretion to provide an indefinite time for Gaines's repayment without also requiring Gaines to "do equity by solving the tax delinquency that threatens the property."

By way of background, Lehman argued to the trial court that as of August 15, 2021, the property would be at risk of a tax sale, and the court should require that Gaines "either pay the judgment or save the property from the tax sale," "one or the other." An April 27, 2021 declaration from counsel for Lehman attached a copy of the "Defaulted Tax Roll" page from the County of Los Angeles Treasurer and Tax Collector's website, showing a "[r]edemption [a]mount" of more than $117,000. At the final hearing, Lehman's counsel said that "at least I would request that there be some requirement on the part of Mr. Gaines to do something about this tax sale to—you know, protect the property."

On appeal, Lehman confirms it repeatedly argued in the trial court that "the delinquent tax circumstance militated in

17

favor of a short period of time to pay the judgment *or* that some other accommodation be made such as having Gaines cure the tax delinquency." (Italics added.) And the heading of Lehman's argument in its opening brief is that it was inequitable to delay payment "without requiring Gaines to cure the tax default."

We conclude from these statements by Lehman that Lehman accepts the proposition that under the circumstances, it would not have been unreasonable for the trial court to extend the repayment date until Longwood 18's quiet title action is resolved, so long as Gaines is required to cure the tax default and the repayment amount includes postjudgment interest. In any case, it does not appear to us that Lehman argued in its opening brief that such a disposition would have been an abuse of discretion.

Gaines, for his part, contends there was no abuse of discretion in the trial court's indefinite extension of the time to make repayment. Gaines says Lehman "has not presented anything other than speculation regarding a 'looming' tax sale," and these speculative contentions "do not outweigh the equities in favor of Gaines." He attributes his inability to complete the sale of the property and make the repayment to Lehman to "the collaborative efforts of Lehman and Longwood to delay and obstruct the sale from being completed." We disagree.

We see no reason to ignore the very real risk of a tax sale simply because one has not yet been scheduled. Nor should the trial court have done so. And we are not persuaded the claimed collaboration between Lehman and Longwood 18 has any bearing on the resolution of this case.

Gaines is correct that in 2017, before the end of the trial, Lehman's counsel recorded Tornberg's deed to Longwood 18. So

18

Lehman has long known of Longwood 18's interest in the property, and both Lehman and Longwood 18 filed objections when Gaines sought probate court approval to sell the property. Indeed, Lehman explains in its opening brief its interest in Longwood 18's success in its case against Gaines: if Gaines does not pay the judgment amount or if Longwood 18 prevails in its quiet title action, Lehman expects to enforce its lien against Longwood 18's interest in the property. But Gaines has not shown that such "collaboration" was improper. And it would be speculation to conclude that Gaines would otherwise have been able to sell the property, given his title would in any event be clouded by Longwood 18's unadjudicated claim of title.

## DISPOSITION

The fourth amended judgment is modified to include postjudgment interest running from September 16, 2020, on the $567,955.96 repayment to Lehman. The judgment is further modified to require Gaines to pay the delinquent taxes on the property in full within 60 days of the issuance of this court's remittitur, and to require Gaines to remain current in paying future property taxes when due, in which case the deadline for Gaines's repayment to Lehman shall remain as ordered in the fourth amended judgment. The judgment is further modified to provide that, if Gaines does not pay the delinquent taxes in full within 60 days of the issuance of this court's remittitur, then Gaines is obligated to pay the $567,955.96 plus postjudgment interest to Lehman, calculated from an accrual date of September 16, 2020, within a reasonable period of time of the issuance of this court's remittitur. If Gaines fails to pay the property taxes as ordered herein, the trial court shall decide what is a reasonable time by which Gaines must pay the $567,955.96

19

plus postjudgment interest to Lehman, consistent with the views expressed in this opinion.  If payment of the $567,955.96 plus postjudgment interest to Lehman is not timely made, judgment for Gaines is to be vacated and judgment is to be entered for Lehman.  As so modified, the judgment is affirmed.

The parties shall bear their own costs on appeal.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.